MARGARET PFISTER, Appellee, v. DOON ELECTRIC COMPANY et al., Appellants.

**MASTER AND SERVANT:** Workmen's Compensation Act—Regular Intermittent Employment Not "Casual." An employment in a labor-employing business is not "casual" when it embraces the intermittent doing by a part-time expert employee of unforeseen hazardous acts incident to such business.

Headnote 1: Workmen's Compensation Acts, C. J. p. 52.

*Appeal from Lyon District Court.*—C. C. BRADLEY, Judge.

FEBRUARY 17, 1925.

THIS is an appeal in a workmen's compensation case. Compensation was allowed by the arbitration committee, by the industrial commissioner, and by the district court. From the judgment of the district court, the defendant has appealed.—*Affirmed.*

*Harvey H. Hindt* and *Snyder, Gleysteen, Purdy & Harper,* for appellants.

*Deacon, Sargent & Spangler, George C. Gorman,* and *Riniker & Thomas,* for appellee.

EVANS, J.—Compensation was allowed for the death of the employee. The contention of the defendant is and has been that the employment of the decedent was "casual" only, and that for that reason he did not come within the provisions of the Compensation Act. The principal defendant is the Doon Electric Company. It is a corporation organized and operated for

the purpose of supplying electric light and power to the citizens of the town of Doon. Its property consists in the main of its poles and wires within and in the vicinity of the town of Doon, together with the usual equipment for distributing the service to its local patrons. It buys its electricity from another company, and operates no plant for the manufacture or generating of the electric light or power. Its territorial range of operations is, therefore, limited. Its employees were few. The deceased, Pfister, was its sole lineman, and was accidentally killed in June, 1922, while in the service of the defendant. It is conceded that such service was within the scope of trade or business of the defendant company. Though he was the sole lineman of the company, such service did not constitute his sole occupation. On the contrary, his principal occupation was in the service of a telephone company, for which he was also lineman. He received from the telephone company a fixed wage of about $97 per month. His contract with the telephone company bound him to perform a certain amount of service, but he was not bound to render such company his full time. In other words, subject to the performance of his stipulated duties, he reserved control of his own time, and was at liberty to engage in other service and employment. He did engage in other service. He agreed informally with the defendant to become its ''lineman:'' that is to say, he agreed to do the ''line'' work for the company at the rate of 65 cents per hour whenever he should be called for. This engagement recognized a priority of call for his service in favor of the telephone company. The volume of line work necessary to keep up the lines of the defendant company in proper shape was comparatively small, and required only part-time work. This engagement was entered into in August, 1921. Pfister did all the line work of the defendant company thereafter, although such work required only a few hours a day for a few days in a month. His compensation was paid at the agreed rate of 65 cents per hour of time expended. In August, he worked for a few hours of one day; and likewise in September and in October. In November, he worked for a few hours on each of six days between November 16th and November 30th. In December, he worked upon each of 11 days; in January, upon each of 5 days; in February, upon each of 6

days; in March, upon each of 7 days; in April, upon each of 4 days; in May, upon each of 5 days; in June, upon each of 2 days, the last being the date of his death. The total number of hours devoted by him to the work in that period amounted approximately to 160 or 170 hours.

These are sufficient of the salient facts to indicate the general reason why the defendant contends that employment was "casual," and not within the provision of the Compensation Act. The question presented involves a construction of that proviso of the statute which excludes from its operation persons whose employment is purely "casual." This proviso appears in Section 2477-m16 of the Code Supplement of 1913, as follows:

"Except a person whose employment is purely casual *and* not for the purpose of the employer's trade or business."

By Section 10 of Chapter 270 of the Acts of the Thirty-seventh General Assembly, this proviso was made to read:

"Except a person whose employment is purely casual *or* not for the purpose of the employer's trade or business."

In Section 1421 of the Code of 1924, this proviso appears in the following form:

"A person whose employment is purely casual *and* not for the purpose of the employer's trade or business."

It also appears in Section 1361 of the Code of 1924 as follows:

"Persons whose employment is of a casual nature."

The death of the decedent occurred while the amendment made by the thirty-seventh general assembly was in force, and we shall concentrate our attention upon the form of the proviso there provided.

We have had occasion to consider this proviso and to give affirmative effect to it in the following cases: *Bedard v. Sweinhart*, 186 Iowa 655; *Herbig v. Walton Auto Co.*, 191 Iowa 394; *Porter v. Mapleton Electric Light Co.*, 191 Iowa 1031; *Oliphant v. Hawkinson*, 192 Iowa 1259. No one of these cases is sufficiently in point to be controlling of the case before us. The construction of this brief proviso involves to some degree a construction of the entire Compensation Act. The purpose of such proviso is to define and limit the objective of the Compensation Act.

It may be stated broadly that this objective was and is to impose upon industrial enterprises the burden and cost of their hazards, and to make such cost a part of the "overhead" of the trade or enterprise. Necessarily, the act has its natural application to such trade or business as employs labor and offers labor a hazardous occupation. The terms of the statute are broad and comprehensive enough in the first instance to include within its provisions every employer and every employee, regardless of whether the employer was engaged in any trade or business which required the employment of labor for its operation. In carrying out its objective, this statute requires the employer to insure his liability, and thereby to furnish security to the laborer for the performance of his duties, under the statute. Without the proviso under consideration, the statute might defeat its own ends, by becoming a nuisance in its operation. No person, even though not engaged in any trade or business, could employ any other person to do any service without coming under the operation of the statute. If one should employ a man to repair a fence, he must needs first take out a policy of insurance and insure his liability. The purpose of the proviso under consideration was to narrow or to withdraw the application of the broader terms of the statute from those "casual" employments which are more or less incidental to the daily life of everybody.

What, then, is a *"casual"* employment? That is the rub. It is less difficult to recognize such "casual" employment when it is presented in a given case than it is to lay down a rule or definition that can become decisive of every case. So far as we are advised, no court has ventured on such a definition, though Compensation Acts seem to be generally in vogue in many states.

The persistency with which the legislature has joined, both conjunctively and disjunctively, the *"casual* employment" and the employment "for the purpose of the employer's trade or business" would indicate a legislative purpose to correlate those terms and to treat them as in some degree synonymous. In other words, the Compensation Act is intended to apply to the trade or business of the employer. If the employer is not engaged in a trade or business, then does employment by him become a

"casual" employment? Or even if he be engaged in a labor-employing trade or business, may he not even then employ a man to milk his cow, or to tend his furnace, or to mow his lawn, even regularly, without bringing such employment under the operation of the Compensation Act? Fortunately we have no occasion to answer these questions at this time. It may safely be said, however, that, if an employer is not engaged in a labor-employing enterprise or business, this may be an influential circumstance, tending to establish the "casual" character of the occasional employments which he may make. Such was the case of *Bedard v. Sweinhart*, 186 Iowa 655; and also the case of *Oliphant v. Hawkinson*, 192 Iowa 1259.

On the other hand, where the employer is engaged in a labor-employing trade or business; where the employee is employed for the purpose of such trade or business, and is specialized for such work, and meets the hazards incidental to such trade or business; and where his injuries result *from* such hazards, and *while* he is doing such work, the "casual" quality cannot readily, and does not ordinarily, attach. The exceptional case might still arise. In *Herbig v. Walton Auto Co.*, 191 Iowa 394, the employer was engaged in a trade or business, but the employee was employed only for an "odd job." This was to clean a room for an incoming tenant, which room had been previously vacated by the employing auto company. The employment involved none of the hazards incidental to the trade or business of the employer. We held the employment to be "casual." In *Porter v. Mapleton Electric Light Co.*, 191 Iowa 1031, the employer was engaged in a labor-employing trade or business, and the employee was subjected to the hazards of that business; but the facts of the case were exceptional. The injured laborer never in fact became the employee of that employer. He was the employee of another employer, and was sent to his work by such other employer as a temporary accommodation by one employer to another, without involving the assent of the employee, except as he rendered obedience to his own master. We held, in effect, that he had not, therefore, bound himself to the operation of the Compensation Act, and that he was at liberty to reject its application; and we termed his serv-

ice a "casual employment." The case may fairly be deemed a border-line case.

In the case before us, the conditions above stated are all fully met. The defendant was engaged in an enterprise that required regular employment of labor. The occupation was hazardous to labor. It was under statutory duty to insure its liability. True, it was a small concern, and it had need for very few laborers; but it needed them, nevertheless. The less the need, the less the cost, and the less the hazard. But the reduction of its need to small proportion did not eliminate either the necessity of employment or the hazard of the employee. The employer, at least, was still within the scope of the Compensation Act. Was the employee within the scope of it? It is conceded that he lost his life while engaged in the business of his employer. He had specially fitted himself for this very line of work. The work which he engaged to do carried the very hazards which were incidental to the defendant's business. It was the very hazard against which the defendant was required to insure.

It is argued that his work and his time were irregular; that it was purely voluntary on his part whether he would do the work at all; that he had not bound himself for any length of time or for any particular amount of work; that the amount of work he might be asked to do in the course of a year was entirely speculative and uncertain; and that, therefore, he might not be required to do any.

The work of the employee as to the time thereof was intermittent, rather than irregular: it was voluntary only in the sense that all employment is voluntary: that it was terminable at any time at the will of either party is not an unusual incident of employment. Moreover, all such speculations adjust themselves to the protection of the employer against undeserved liability. If it be so that the employee were not called on to do any work, then he carried no hazard, and subjected his employer to no liability. It was because he *was called on* to do the very work for which he was employed, and because he *was doing it* that the hazard of his occupation struck the mortal blow. The fact that the service was intermittent as to time did

not, we think, destroy its essential character as regular employment in the line of the business of his employer.

Formality is not essential to a contract of employment. It may be accomplished with few words, or may be implied from conduct, without words. The fact that it may be terminated at any time, or that the service is to be and is rendered intermittently, is not inconsistent with the existing relation of employer and employee, while it lasts.

It is further argued that the very necessity for the work which the deceased was doing at the time of his injury was the result of unforeseen emergency, and that it did not arise out of the regular operations of the business of the defendant.

It appears that, in April, 1922, an unusual sleet storm had damaged the defendant's wires, and had greatly increased the slack thereof; that it therefore became necessary to take up such slack and to tighten and elevate the wires. Such was the work in which the deceased was engaged at the time of the accident. It is argued that this circumstance rendered the employment casual.

We do not think that the fact that the sleet storm had imposed loss upon the defendant, and had made necessary additional work in the maintenance of the lines, can have any proper influence in removing the employment from the scope of the Compensation Act and in reducing such employment to the character of the "casual." The storm, though unusual and severe, was yet only a feature of the weather. The weather is a factor which must always be reckoned with in the maintenance of outdoor equipment; and this is so though its extremes be variable and sometimes specially destructive, and though its changes be, as they often are, unexpected. A change of weather ought not to be deemed effective to change the character of the employment, nor should weather conditions be deemed a factor in determining the nature of the employment undertaken. It was fairly within the scope of defendant's business to meet appropriately all the contingencies of weather, and to adapt itself thereto to the extent of its ability. If this required more labor, and therefore more employment, we see no reason for saying that the character of *more* employment is different from that of *less* employment. This is not saying, however, that an emergency

may not be so brief, and the demand created by it for help so cursory, as to fall within the category of the "casual." No such fleeting circumstance is presented here.

We reach the conclusion that the employment in this case was not "casual," within the meaning of the statute. The judgment is, accordingly,—*Affirmed.*

FAVILLE, C. J., and STEVENS, ARTHUR, DE GRAFF, VERMILION, and ALBERT, JJ., concur.