HOWARD F. EDDINGTON, Appellee, v. NORTHWESTERN BELL TELE-
PHONE COMPANY et al., Appellants.

MASTER AND SERVANT: Workmen's Compensation Act—Casual
Employment—Character of Work Evidence of Character of Em-
ployment. An employment in a labor-employing business, when the
employment embraces the hazards incident to the business, is not
rendered "casual" by the mere fact that the employment was for
*a few days only*, and was occasioned by the taking on of "extra"
help, owing to an unforeseen accumulation of work.

Headnote 1: Workmen's Compensation Acts, C. J. p. 51.

*Appeal from Woodbury District Court.*—A. O. WAKEFIELD,
Judge.

FEBRUARY 20, 1925.

REHEARING DENIED DECEMBER 17, 1925.

ACTION for damages by an employee against his employer
for personal injuries sustained in the course of his employment.
There was a verdict for the plaintiff, and judgment entered
thereon. The defendant appeals.—*Reversed and remanded.*

*Burgess & Gill* and *Parrish, Cohen, Guthrie & Watters,* for
appellants.

*North & Pollock* and *Walter & Loepp,* for appellee.

EVANS, J.—The only question presented on this appeal is
whether the plaintiff's employment came within the purview of
our Compensation Act. If yea, then the plaintiff was confined
to his remedy thereunder. If nay, then the plaintiff was en-
titled to pursue his common-law remedy for damages. The de-
fendant contends for the affirmative on this question; and the
plaintiff, for the negative.

Concededly, the employment was within the purview of the
Compensation Act unless it was covered by the specific excep-

tions thereto. The plaintiff contends that his employment was purely "casual," and therefore within the statutory exception. Such is the question presented.

The defendant is a corporation engaged in the operation of a telephone system. The plaintiff sought and obtained employment as a lineman. Prior to such employment, the plaintiff had already secured another position, which would not be available to him for 30 days or more. He therefore limited the time of his employment to 30 days, subject to a possibility of a later extension. This employment was had and begun about the middle of April, 1922, and the injury to plaintiff occurred about one month later, in the course of his employment, and while engaged in the trade or business of the defendant.

At or about the time of plaintiff's employment, the defendant company was substantially enlarging its force of linemen because of a press of work, caused by a sleet storm just preceding such employment, which greatly damaged the poles and lines of the defendant company. The plaintiff was one of many additional employees employed by the company at or about the same time, in the same general line of work. This was largely to repair and straighten and tighten poles and lines which had been damaged by the storm. Of the extra men then employed, some of them continued their employment for shorter periods, of a few days only, and some for longer periods; while still others continued their employment indefinitely. The foregoing statement of facts follows the testimony of the plaintiff. It is a sufficient statement of the material facts for the purpose of the question before us.

We have just had occasion to construe our Compensation Act in a similar case. See *Pfister v. Doon Electric Co.*, 199 Iowa 548. Our conclusion in that case must be deemed decisive of this, unless a material distinction between the two cases is to be found at one point.

The major premise of the plaintiff is that his employment was temporary, and that he was employed, not as a regular lineman, but as a mere "extra." Therefore he contends that his employment was purely "casual." We have to consider, therefore, whether this distinction is material and controlling.

In the *Pfister* case, the employer was defending against

liability on the ground that its employment of the claimant was purely "casual." We held that he was employed for the purpose of the trade and business of that defendant; that he was subjected thereby to the hazards of the work, and was injured thereby; and that his employment was not "casual," within the meaning of the Compensation Act. The allowance of compensation was, therefore, sustained.

In the case at bar, it is not the employer, but the employee, who seeks to escape the operation of the Compensation Act, and presents substantially the same contention as was presented by the employer in the *Pfister* case. The question, however, must be disposed of by us precisely the same as if the employee were here asking compensation under the statute. In such event, could we say that he was outside of the scope of the statute and within its exceptions, and therefore not entitled to compensation?

If we accept the contention that the employment of the plaintiff was temporary, what is the effect of such fact upon the question presented? That the temporary character of employment is a circumstance to be considered, is doubtless true. Can we say, however, that, because employment was for a period of only 30 days, it became thereby "casual employment," and was not compensable under the act? To do so would be to add something to the statute. If such were the purpose of the statute, it were easy to have so stated therein. If we should so hold, should we close the door at that point or period of time, or should we leave it open for more extended periods in later cases?

Is there a controlling force in the suggestion that the plaintiff was working as an "extra?" He was an "extra" only in the sense that many other men newly hired were "extras." They were "extras" in the sense that the corporation was working a larger number of linemen than usual. If the increase of force of men operates to withhold from the workmen the compensation of the statute, then it would become material to inquire, in all cases of employment, whether the employer was exceeding his quota of employees. This also would add something to the statute. If such were the purpose of the statute, it could and ought to have been so stated therein.

It is said by the plaintiff that some of these "extras" worked but a few days, and some for longer periods; while some of them continued indefinitely. They were all employed under the same circumstances. If the employment of the plaintiff was "casual," for the same reason the employment of the others was "casual." If we apply such a rule to those employees who continued indefinitely, did they continue under "casual employment?" If not, when and how was the transformation made? Is the character of the employment, whether casual or noncasual, to be deemed to be undergoing transformation by reason of the later continuity of the work? Perhaps it could be said that re-employment might be implied by continuity of work. But this only introduces artificial complications into the construction of the statute. The statute is couched in simple terms, and its simplicity ought to be preserved, as far as possible. In the *Pfister* case we have held that the "extra" work created by weather conditions is not to be deemed a controlling fact on the question here presented.

Our previous cases on the question presented are considered in the *Pfister* case, and we shall not unduly repeat here what we have said there. There is little help to be had from a consideration of the decisions from other states, because of the variation of terms employed in the respective statutes of other states.

The mother statute of all the Compensation Acts is that of England. This statute has had a uniform construction by the English courts for many years. But though that statute has been the pattern, many of our states have not adhered to it literally, but have qualified it by changing some clauses and adding others. The rule of construction adopted by the English courts has always been that the character of the *work* evidences the character of the *employment*. Some of the state courts of this country have held that the character of the *employment*, and not the character of the *work*, is the true test. This holding, however, is predicated upon the peculiar provisions of the particular state statute. It does not purport to run counter to English decisions. For instance, an authority specially relied on by the plaintiff is the case of *Western Union Telegraph Co. v. Hickman*, 161 C. C. A. 17 (248 Fed. 899). In that case a

lineman was hired by a telephone company to work for a period of five days. On the fourth day he was injured while at his work. He was held to be a "casual" employee. The case arose in West Virginia. We cannot do better, to illustrate the divergence of decision which must arise in different jurisdictions, than to quote the following from the opinion in the cited case:

"The English Compensation Act, which some of our states have closely followed, excepts 'a person whose employment is of a casual nature and who is employed otherwise than for the purpose of the employer's trade or business.' Construing this act, the English courts have held that the kind of work done by the employee, rather than duration of service, is the determining factor. If the work pertain to the business of the employer, and be within the scope of its purpose, the employment is not 'of a casual nature,' although the hiring be only for a short period of time. The Connecticut statute (Pub. Acts, 1913, c. 138) is practically the same as the English, and accordingly the Supreme Court of that state has held (Thompson v. Twiss, 90 Conn. 444, 97 Atl. 328, L. R. A. 1916E, 506) that the nature of the employment was measured, not by tenure of service, but 'by the character of the work.' The New Jersey statute likewise exempts those 'whose employment is of a casual nature.' But the West Virginia act, in defining exceptions, uses the terms 'casual employment' and 'persons casually employed.' The equivalent exemption of persons 'whose employment is but casual' appears in the Compensation Laws of Massachusetts (prior to the amendment of 1914· [St. 1911, c. 751, as amended by St. 1912, c. 571]), Illinois (Laws 1911, p. 315, as amended by Laws 1913, p. 335), Michigan (Pub. Acts [Ex. Sess.] 1912, No. 10), and Minnesota (Gen. St. 1913, §§8195—8230). This noticeable departure from the language of the English statute indicates a legislative intent to broaden the exception and place it on a different basis. Its apparent effect is to make exemption depend, not on the nature of the work performed, but on the nature of the contract of employment. If the hiring be incidental or occasional, for a limited and temporary purpose, though within the scope of the master's business, the employment is "casual,' and covered by the exception."

It will be noted that that decision was predicated upon a

particular clause in the West Virginia Act wherein the exception was made to include, not only "casual employment," but also "persons casually employed." A similar clause is included in the act of Massachusetts and some other states. The clause which appears to have been the turning point of decision, and which appears to have called for a construction different from that of the English decisions, is not contained in our statute. Indeed, in that respect our statute follows closely the original English pattern. Moreover, we are impressed that the distinction between the two clauses in the West Virginia Act is not readily observable, and might well be deemed to have been nonexistent. We note further that, under our statute, the "casual" is expressly reduced and restricted to the "*purely* casual."

We are of the opinion, also, that the distinction made as to whether, on the one hand, the character of the *employment* shall be the test, or whether, on the other, the character of the *work* be the test, is somewhat strained, if not fanciful. The *one* is the complement of the *other*. The character of the work is forecast in the employment, and the character of the employment is reflected in the work. The one evidences the other. Moreover, work for an employer with his knowledge and consent becomes employment, without preceding formality. We touched upon this question in the *Pfister* case, and we will not pursue it here. It should always be borne in mind as the polestar of construction of any statute that the *rule* is broader than the *exception;* that the exception is specific, rather than general; and that, therefore, doubts and implications should be solved in favor of the rule, rather than of the exception.

The clear objective of the Compensation Act is to protect the employee against the hazards of the employer's trade or business. When the relation of employer and employee is established, and when the employee is subjected to the hazards of his employer's trade or business, and suffers injury therefrom while so engaged in the due course of his employment, the excepting proviso of the statute ought not to be enlarged by difficult or doubtful construction, so as to render such an injury noncompensable.

We are of the opinion, therefore, ·that the fact that this employment was only for 30 days was not inconsistent with the

main objective of the statute, and that the excepting proviso of the statute should not be enlarged so as to include it as a "casual" employment. We are of the same opinion as to the "extra" character of the employment, and as to the fact that the employee was one of many who were then employed, not all of whom would be retained indefinitely in the employment of the company. Substantially all employment is indefinite in its tenure, and the hazard of its work for the day is neither greater nor less because of the future tenure.

Inasmuch as we find that the plaintiff's employment came under the operation of the Compensation Act, it necessarily follows that his remedy thereunder is exclusive, and that he is not entitled to pursue a common-law remedy for damages. The plaintiff's case presents a strong appeal, in that his injuries were serious, and in that statutory compensation may prove quite inadequate. But we must construe the statute precisely as we would if he were here claiming compensation under it. To sustain his contention now would be to emasculate the statute greatly, to the detriment of all employees in the future. For a review, pro and con, of the cases on this subject, see 33 A. L. R. 14, 23, 67.

The motion of the defendant in the lower court for a directed verdict should have been sustained, not for want of jurisdiction in the court, but for want of right to this remedy by the plaintiff.

The judgment below will be reversed, and the cause remanded, with direction to dismiss.—*Reversed and remanded.*

Faville, C. J., and Arthur and Albert, JJ., concur.