CARRIE GARDNER, Appellee, v. TRUSTEES OF MAIN STREET METHODIST
EPISCOPAL CHURCH et al., Appellants.

No. 41643.

OCTOBER 24, 1933.

REHEARING DENIED APRIL 5, 1934.

McNett, Kuhns & Brown, for appellants.

Elmer K. Bekman and Gilmore & Moon, for appellee.

KINTZINGER, J.—This case was originally decided in Gardner v. Trustees of Main Street Methodist Church, reported in 244 N. W. 667. A rehearing was granted, and the former opinion is hereby withdrawn.

The defendant Methodist Episcopal Church of Ottumwa is a volunteer association for church purposes; the other defendant is an insurance carrier from whom the church had purchased a compensation policy to protect its workmen, about to be employed. The church had undertaken the construction of a church building in Ottumwa, and was at the time in question engaged in excavation work for the basement of the church. This work was being done by the trustees of the church, and one Mr. Porter was authorized to employ the necessary workmen to complete the basement.

Frank Gardner, the decedent, was on April 8th employed with others to assist in completing the excavation. He worked from April

8 until May 1, 1931, on which date a bank of earth caved in, causing him severe injuries resulting in his death. At the time Gardner was employed the church planned to construct the entire building and engaged a superintendent to direct the building operations, and hire laborers. Before the excavation was finished, the church let the contract for the superstructure, but continued with the excavation work itself. The excavation was completed about May 2d, but the church thereafter continued to employ a number of men to do certain work on the premises not included in the building contract, such as grading, filling, sidewalks, and other necessary clearing up and incidentals. In the prosecution of this work, the church employed a number of workmen until almost the first day of July. The testimony shows that Mr. Porter, the man in charge for the church, hired Mr. Gardner as one of his permanent men. He told Gardner when he was employed that, even though a contractor did build the church building, he would be employed as a regular man as long as there was any work to do, and that he would give him a job until all the work was finished; he was told he would have regular work for over two months. Between April 8th and May 1st the decedent had worked eighteen days. He worked practically every working day during that time.

It is conceded that the death resulted from injuries arising out of and in the course of his employment. The errors relied on may be grouped under three heads:

1. That the decedent's employer did not come within the term "employer" under the Workmen's Compensation Act.

2. That the decedent did not come within the meaning of the term "employee" under that act, because his employment was "purely casual" and not for the purpose of the employer's trade or business, and,

3. That the award and judgment rendered in favor of claimant was not supported by the evidence.

I. It is claimed, first, that, because the church was a charitable and eleemosynary institution, it is not an employer within the purpose of the Workmen's Compensation Act, and that it only applies to industrial pursuits carried on for pecuniary gain. Such was, no doubt, the construction placed upon the original act. We quote with approval the language used by the industrial commissioner in granting the award in this case. He says:

"Repugnant to all sense of justice as well as to the impulses of better human nature this provision was long ago eliminated from our law. 'Pecuniary gain' is no longer a factor in the limitation of employment relationship in the State of Iowa. We are now assuming that the statute means what it says in imposing compensation obligation on every actual employer, except in employments specifically excluded from the operation of the law."

The original act in section 2477-m16 (h), Code Supp. 1913, provided that " 'Industrial employment' includes only employment in occupation, callings, businesses or pursuits which are carried on by the employer *for the sake of pecuniary gain.*" (Italics ours.) This statute limited the definition of "employer" as contended by appellant to a business or pursuit carried on "for pecuniary gain". The original statute was repealed in 1917. The present statutes applicable to this case are sections 1361, 1363, and 1421.

Section 1361 provides:

"This chapter shall not apply to: 1. Any household or domestic servant. 2. Persons whose employment is of a casual nature. 3. Persons engaged in agriculture, in so far as injuries shall be incurred by employees while engaged in agricultural pursuits or any operations immediately connected therewith, whether on or off the premises of the employer." 4. Refers to employees of municipal corporations, etc., and is not material here.

Section 1421 provides:

"The following definitions of terms shall prevail:

"1. 'Employer' includes and applies to any person, firm, *association,* or corporation, state, county, municipal corporation, city under special charter and under commission form of government, school district, and the legal representatives of a deceased employer.

"2. 'Workman' or 'employee' means a person who has entered into the employment of, or works under contract of service, express or implied, or apprenticeship, for an employer, except as hereinafter specified.

"3. The following persons shall not be deemed 'workmen' or 'employees': (a) A person whose employment is purely casual *and* not for the purpose of the employer's trade or business. (b) A person engaged in clerical work only, but clerical work shall not include anyone who may be subject to the hazards of the business.

(c) An independent contractor. (d) A person holding an official position, or standing in a representative capacity of the employer, or an official elected or appointed by the state, county, school district, municipal corporation, city under special charter or commission form of government."

Section 1363 provides as follows:

"Except as provided by this chapter, *it shall be conclusively presumed that every employer has elected to provide, secure, and pay compensation according to the provisions of this chapter for any and all personal injuries sustained by an employee arising out of and in the course of the employment* [italics ours], and in such cases, the employer shall be relieved from other liability for recovery of damages or other compensation for such personal injury."

It is apparent from the reading of these sections that the term "employer" is no longer limited to a person engaged in an occupation, calling, business, or pursuit carried on by the employer *for the sake of pecuniary gain.* Such provision in the original Compensation act was eliminated by the 37th General Assembly in 1917.

Appellant contends that Oliphant v. Hawkinson, 192 Iowa 1259, 183 N. W. 805, 33 A. L. R. 1433, is authority for the rule that, where the business of the employer was not for pecuniary gain, the employee did not come within the terms of the Compensation Act. That case arose in 1916, and under the terms of the act then in force the decision was correct.

Many other cases to the same effect from other states are cited, but on examination we find they do not fit the Iowa Compensation Act, and are not applicable. The provision in the original Iowa act that " 'industrial employment' includes only employment in occupation, callings, businesses or pursuits which are carried on by the employer *for the sake of pecuniary gain"* is no longer the law in this state. "Pecuniary gain" is no longer a factor in the limitation of employment relationship in the state of Iowa. In the construction of the present statute, therefore, we must assume that the legislature intended to impose the compensation obligation on every employer, except in employments specifically excluded by statute. Under section 1421 the term "employer" includes and applies to any person, firm, *"association,"* or corporation referred to in the above-quoted statutes who are not therein excepted from its pro-

visions. The act is no longer limited to an employer engaged in any particular kind of business or occupation except those referred to in the sections quoted. It does not except "associations organized for church purposes."

The intention of the legislature must be gathered from the law itself and from the law it supersedes. Prior to 1917, the act applied only to employers engaged in occupations, callings, or businesses carried on *for the sake of pecuniary gain*. This provision was stricken out. The courts will not read into a statute words which change their meaning or give a construction thereto contrary to the plain and unambiguous language of the statute itself. Much less will the courts read into a statute words which have long previously been stricken therefrom. Oliphant v. Hawkinson, 192 Iowa 1259, 183 N. W. 805, 33 A. L. R. 1433; In re License of Motor Vehicles, 179 N. W. 609; Heessel v. Creston Nat'l Bank, 205 Iowa 508, 218 N. W. 298. A statute may not be amended by judicial construction. Pappas v. North Iowa Brick & Tile Co., 201 Iowa 607, 206 N. W. 146; Hawkeye Portland Cement Co. v. C., R. I. & P. R. Co., 198 Iowa 1250, 201 N. W. 16; Eddington v. N. W. Bell Tel. Co., 201 Iowa 67, 202 N. W. 374. It is our conclusion that the term "employer" as used in the present statute is broad enough to include a church "association", and we find no error in the lower court's conclusion on this point.

II. It is also contended that the defendant cannot be deemed a "workman" under paragraph 2, section 1361, and paragraph 3(a), section 1421, because his employment was "purely casual *and not for the purpose of the employer's trade or business*." Under these provisions many employees are excepted from the act, and within the exceptions are included workmen whose employment is both "purely casual" *and* not for the purpose of the employer's trade or business. Appellant claims the decedent's employment was both "casual" *and* "not for the purpose of the employer's trade or business." Paragraph 2 of section 1421 defines the term "workman" or "employee" as a "person who has entered into the employment of, or works under contract of service, express or implied * * * for an employer, *except as hereinafter specified*."

Paragraph 2 of section 1361 provides: "Persons whose employment is of a casual nature" do not come within the act; and paragraph 3(a) of section 1421 also provides that "a person whose employment is purely casual *and* not for the purpose of the employer's

trade or business" is excepted from the act. The two foregoing paragraphs must be read together. When so read, it is clear that they should be construed as meaning that a person shall not be deemed a workman, whose employment is purely casual *and* not for the purpose of the employer's trade or business. Oliphant v. Hawkinson, 192 Iowa 1259, 183 N. W. 805, 33 A. L. R. 1433.

In Oliphant v. Hawkinson, 192 Iowa 1259, loc. cit. 1262, 183 N. W. 805, 807, 33 A. L. R. 1433, we said:

"It will be observed that section 2477-m provides that the act 'shall not apply to persons whose employment is of a casual nature.' And section 2477-m16 * * * excepts from the provisions of the statute a 'person whose employment is purely casual *and* not for the purpose of the employer's trade or business.' So we have the situation that under section 2477-m all persons 'whose employment is of a casual nature' are excepted from the provisions of the act. Under section 2477-m16, par. b, there is excepted from the definition of a workman 'a person whose employment is purely casual *and* not for the purpose of the employer's trade or business.' The two sections must be read together in order to arrive at the intention of the legislature in enacting the statute. Standing alone, the first section exempts from the provisions of the statute *any* person whose employment is casual. Section 2477-m16, as originally enacted, places an apparent limitation upon the provisions of section 2477-m in providing that the workman to be outside the act shall not only be one whose employment is purely casual, but also one whose employment is not for the purpose of the employer's trade or business. Under the latter section, as originally enacted and as applicable to this case, it is evident that in order that the act shall not apply, the 'workman' must be one 'whose employment is purely casual' *and also* one whose employment is not 'for the purpose of the employer's trade or business.'

"In considering this case, we shall regard it as coming under section 2477-m16, as originally enacted, and must squarely meet the question: 'Was the appellee a person whose employment was "purely casual" *and* "not for the purpose of the employer's trade or business?" ' If he was, then he was not entitled to compensation under the act. If he was not, then he was entitled to compensation and the award made was correct."

This section was twice amended later. The original act, being

similar to the present act, was amended in 1917 by striking out the word "and" after the word "casual" and inserting the word "or". The law as thus amended clearly meant that a person shall not be deemed a workman whose employment was either (1) purely casual or (2) not for the purpose of the employer's trade or business. While the act in that form was in force, an employee was not within the act if his employment was *either* of a purely casual nature *or* if it was not for the purpose of the employer's trade or business. Porter v. Mapleton Electric Light Co., 191 Iowa 1031, 183 N. W. 803; Herbig v. Walton Auto Co., 191 Iowa 394, 182 N. W. 204.

The statute was again amended by the 40th Extra Gen. Assem. H. F. 42, section 61 (see Code 1924, section 1421) by striking out the word "or" and again inserting the word "and", thus making the statute again read as it did originally. Under the present statute, therefore, "a person whose employment is purely casual" *and* "not for the purpose of the employer's trade or business" will not be deemed a workman. In order to exclude a person from the benefits of the present act, it must appear both that the employment was of a purely casual nature *and* that it was not for the purpose of the employer's trade or business.

In Porter v. Mapleton Electric Light Co., 191 Iowa 1031, 183 N. W. 803, arising under the amendment of 1917, we said:

"The term 'workman' * * * means 'any person * * * whose employment is purely casual *or* not for the purpose of the employer's trade or business.' * * * Was the employment of plaintiff under the facts of this case 'purely casual'? If it was, *then it is wholly immaterial whether or not his employment was 'for the purpose of the employer's trade or business.'* " (Italics ours.)

Pursuing the same line of reasoning, it naturally follows that, under the present statute, if the employment is not "purely casual", "then it is wholly immaterial whether or not his employment was 'for the purpose of the employer's trade or business.' "

Under the last amendment the word "or" was stricken out and the word "and" was inserted. The statute no doubt was amended for the very purpose of affording relief to employees whose work was not of a "purely casual" nature, although the employment was not for the purpose of the employer's trade or business. Under such construction, the employee would also be afforded relief where

the work was of a purely casual nature provided the employment was for the purpose of the employer's business. Such must have been the intention of the legislature or it would not have changed the word "or" to "and".

Many decisions hold that the purpose of the Compensation Act is to place the burden resulting from personal injuries upon the industry in which the employer was engaged; and that, if the employment was not for the purpose of the employer's trade or business, then the workman should be excepted from the provisions of the act. This would place the entire burden upon the employee or his dependents. We believe that the legislature by the simple language used in paragraph 3(a) of section 1421 intended to eliminate the burdens formerly thrust upon the employee and his family; and we now construe this section to mean just what it says: that, if an employee is not engaged in work of a "purely casual nature", then he is entitled to the benefits of the Compensation Act, although employment was not for the purpose of the employer's trade or business; and vice versa, if his employment is for the purpose of the employer's trade or business, he also comes within the act, although his employment is of a "purely casual" nature. In other words, in order to put the workman outside of the Compensation Act, it must now appear both that the employment was of a "purely casual" nature, *and* that he *was engaged in employment that was not for the purpose of the employer's trade or business*. If therefore in this case it is shown that the decedent's employment was not of a purely casual nature, *or* that his employment was for the purpose of his employer's business, then his dependents are entitled to the benefits of the act.

We will first consider if his employment was "purely casual". An examination of the cases referred to by appellants as holding the work to be of a purely casual nature do not apply. In Herbig v. Walton Auto Co., 191 Iowa 394, 182 N. W. 204, the workman was employed to clean up the employer's premises after he had moved out. It was estimated this work would not take over a day and a half. It was held that he was engaged in casual employment.

In Bedard v. Sweinhart, 186 Iowa 655, 172 N. W. 937, the workman, after having shingled a roof on a house, noticed that a chimney needed a little cement, and volunteered to apply it if the owner would furnish it. While doing this work he was injured. He had already finished his shingling job and was working for another

employer. The little cement work did not take him over an hour, and it was held that he was engaged in casual employment.

In Porter v. Mapleton Electric Light Co., 191 Iowa 1031, 183 N. W. 803, the workman was engaged in resetting a few light poles, requiring about three or four hours' time. While doing this job he was injured. He was not hired as a steady man, and it was held that his employment was casual.

In Oliphant v. Hawkinson, 192 Iowa 1259, 183 N. W. 805, 33 A. L. R. 1433, the workman was engaged in assisting several other men build a corncrib. He had not been engaged for any other work, and the job would have taken about four or five days. It was held in that case that he was not engaged for any other work, and the court held that it was casual. An examination of that case shows that it went off on a theory that he was engaged in an agricultural pursuit because the corncrib was on a farm.

In Pfister v. Doon Electric Co., 199 Iowa 548, 202 N. W. 371, the employee was regularly employed by a telephone company, but had agreed to do line work for the electric company at 65 cents an hour when called on. During a period of eleven months he worked about twenty days in all. *In that case it was held that his employment was not casual.*

In none of the cases cited by appellant was the employee engaged in regular work which would last for a period of more than a few days. In all of the Iowa cases cited by appellant the employment was for a short period of time only.

An employment on a building or in repairing a structure will not be regarded as casual where the work for which the claimant was engaged will extend for an indefinite period, or will require a considerable length of time for its completion. 15 A. L. R. 736 note; Johnson v. Choate, 284 Ill. 214, 119 N. E. 972; Smith v. Heine Safety Boiler Co., 119 Me. 552, 112 A. 516; Kaplan v. Gaskill, 108 Neb. 455, 187 N. W. 943; Gotchy v. North Dakota Workmen's Comp. Bureau, 49 N. D. 915, 194 N. W. 663.

The employment of a caretaker at a club house, at a fixed sum per hour, under the direction of the officers, during the club season, was not casual. Dietz Club v. Niehaus, 110 Neb. 154, 193 N. W. 344.

One employed in maintaining grounds of a summer resort, over a period of three to four months, was not casually employed. Klein v. McCleary, 154 Minn. 498, 192 N. W. 106.

In construing a workmen's compensation statute, the usual and

ordinary definition of the word "casual", as given by the lexicographers, is usually accepted. Aurora Brewing Co. v. Industrial Bd., 277 Ill. 142, 115 N. E. 207; Consumers Mutual Oil Producing Co. v. Industrial Commission, 289 Ill. 423, 124 N. E. 608; Smith & Co. v. Industrial Commission, 299 Ill. 377, 132 N. E. 470; Gaynor's Case, 217 Mass. 86, 104 N. E. 339, L. R. A. 1916A, 363. The word "casual" under the Illinois cases above referred to has been construed to mean "occasional", "irregular", or "incidental", in contradistinction from "stated" or "regular".

An employment is not rendered casual because it is not for any specified length of time, or because the injury occurs shortly after the employee begins work. Industrial Commission v. Funk, 68 Colo. 467, 191 P. 125.

In Porter v. Mapleton Electric Light Co., 191 Iowa 1031, loc. cit. 1033, 183 N. W. 803, 805, we said:

"Not all words can be defined with mathematical nicety, and we appreciate that in construing and defining the terms of the statute in question 'the court is bound, not to a narrow, technical construction, but rather to a broad and liberal construction to make effectual the very purposes for which the law was passed.' Bidwell Coal Co. v. Davidson, 187 Iowa 809, 174 N. W. 592, 8 A. L. R. 1058. This does not imply that the words of the statute shall not be ascribed their ordinary meaning and signification, or that a strained construction shall be given to meet the exigencies of a particular case. It is quite evident that the legislature intended a well-defined meaning of the word 'casual' and that that meaning is its ordinary signification. This word is in common use and its meaning is well understood. What is that meaning? It is: Occasional; incidental; happening at uncertain times; not stated or regular. Its antonyms are: Regular; systematic; periodic and certain. Bedard v. Sweinhart, 186 Iowa 655, 172 N. W. 937."

In that case the employment was of a temporary nature, for one occasion only, and while he had regular employment *with another company*, which loaned him for a special and particular service of about three hours' duration. The employment was therefore only casual.

In the case at bar the evidence clearly shows that the decedent was employed at a regular job which would last for a period of over two months. He began work on the 8th of April, 1931, and

continued until he was injured the following month. The evidence in this record shows that the decedent's employment would have continued until the job was done, which would be for a period of over two months. We are asked to hold, as a matter of law, that such employment is "purely casual". The statute requires the employment to be not simply "casual" but "purely casual". Most compensation statutes do not use the term "purely casual". It is therefore entitled to a strict construction as against the employer and a liberal construction in favor of the employee.

It is the settled law of this state that, although there is no conflict in the evidence, if the facts are such that different conclusions can reasonably be reached therefrom, then the question becomes one of fact for the determination of the commissioner. Can we say, as a matter of law, that all minds would reasonably reach the same conclusion under the evidence in this record, and that the decedent's employment was "purely" casual? If not, then the question was one of fact for the determination of the industrial commissioner, and his findings thereon are final. It is our conclusion from the record in this case that it cannot be said, as a matter of law, that the employment in question was "purely casual". The findings of the commissioner that the employment was not purely casual will therefore not be disturbed.

III. In view of our conclusion upon this question, we believe it unnecessary to determine whether or not the decedent was employed for the purpose of the employer's trade or business. Under the construction hereinabove given to the statutes in question, it is not necessary to show both that the employment was not "purely casual" *and* for the purpose of the employer's trade or business. In order to except such persons from the act, it must appear that the employment is both "purely casual" *and* not for the "purpose of the employer's trade or business". Under a reasonable construction of this statute therefore, if the employment of the person injured is not "purely casual", then it is immaterial whether it was or was not for the purpose of the employer's trade or business. Such is the plain reading of the statute, and it is the duty of the courts to give it a liberal construction for the benefit of the employee and his dependents.

Notwithstanding our conclusion upon this question, and notwithstanding the changing of the word "or" to "and" in the statute, appellant still insists that it is necessary to show that decedent was

employed for the purpose of his employer's trade or business. While we deem it unnecessary to determine this question, we will say that the business of a church is not strictly confined to charitable purposes, spiritual uplift, and the saving of souls. Such, no doubt, is the ultimate object and purpose of all church associations; but it is a matter of common knowledge that, in order to attain such ends, it is also necessary to construct and maintain houses of worship in which the business of the church is carried on. Our land is dotted with churches in which such business is carried on. One of the important purposes of all church associations is the construction and maintenance of the church buildings and temples, in which the ultimate business of the church can be properly conducted. Much business enterprise on the part of a church association is necessary to accomplish this material part of its business. The Methodist Church of Ottumwa no doubt already had an edifice, which perhaps was no longer adequate for the requirements of that association; and as, or if, it became necessary for that body of worshippers to construct a new building, it became necessary to engage in that part of their material business requiring the construction and maintenance of another place of worship. In his ruling the industrial commissioner said: .

"The claim that the employer has no trade or business cannot serve to penalize this dependent family. In spreading the gospel and in exemplifying the principles of Christianity it became necessary for it to engage in the business of providing a place of worship, and Frank Gardner was definitely promoting this worthy enterprise in risking and losing his life in its service. While it is not necessary to the establishment of this claim to negative the contention that a church has no trade or business, it is well to remember that in His earthly career the Head of the Christian Church seriously declared, 'I must be about my Father's business.' Wherefore does not church activity and usefullness qualify as business? This term has such recognition apart from pecuniary gain."

To claim that a church has no business is the height of absurdity. The greatest business in this Christian nation is that conducted by its churches. That it is not conducted for pecuniary gain makes it none the less a business.

Without further discussion we conclude on this point that the

decedent was engaged in at least one department of his employer's business.

IV. Appellant also complains of the amount of the award. We have examined the testimony with reference to the compensation allowable, and it is our conclusion that the most that can be claimed by appellant upon this question would be that there was a conflict in the evidence thereon. Under that situation this court is bound by the findings of the commissioner, and we are satisfied therewith.

It is unnecessary to consider any other questions raised. The judgment of the lower court was correct, and is hereby affirmed.

KINDIG, STEVENS, ANDERSON, MITCHELL, and DONEGAN, JJ., concur.