T. M. DIAL, Appellant, v. COLEMAN'S LUNCH et al., Appellees.

No. 42162.

NOVEMBER 14, 1933.

Carl F. Jordan and C. W. Randall, for appellant.

Roger P. Birdsall, for appellees.

STEVENS, J.—On or about the 14th day of April, 1932, appellant was employed by the appellee Coleman's Lunch to work at the restaurant operated under the above name. The employment began at 8 o'clock in the evening, and the claimant received the injuries complained of about 12 o'clock the same night. He was directed to wash the walls of the kitchen which had become smoked and greasy from use and a fire in an adjacent building. Compensation was awarded to appellant by the industrial commissioner, but, upon appeal to the district court, a reversal was had. The evidence tends to show that very little was said between the parties at the time of the employment, and the record does not very definitely disclose whether it was to be for the single job of washing the walls or

whether it was to continue indefinitely. The evidence was, however, sufficient to support a finding by the industrial commissioner that the employment was not for the sole purpose of washing the walls and that the employer contemplated that it would continue the same as the employment of other persons working at the restaurant. The question presented to this court for decision is: was the employment of appellant purely casual, as provided by section 1361 of the Code, or, if casual, was it for the purpose of the employer's trade or business? As pointed out in numerous of the cases hereafter cited, changes have occurred in the statute from time to time dealing with the subject of casual employment. The term "purely casual employment" has not been so far defined by statute as to assign to it definitely prescribed limitations. The word "casual", as defined by lexicographers, is quoted in Herbig v. Walton Auto Co., 191 Iowa 394, 182 N. W. 204, as follows:

"The word 'casual' is defined in the dictionaries as 'coming without regularity; occasional; incidental;' 'coming at uncertain times or without regularity, in distinction from stated or regular;' 'a laborer or an artisan employed only irregularly.' See Webster and Century Dictionaries."

The statute is, however, far more comprehensive in its scope than the mere technical definition of the word "casual." It is not here employed in its purely technical or abstract sense. It must be construed in the light of the statute and so as to carry out the legislative intent. The term "employer" is defined by sub-division 1 of section 1421 of the Code of 1931 as follows:

" 'Employer' includes and applies to any person, firm, association, or corporation, state, county, municipal corporation, city under special charter and under commission form of government, school district, and the legal representatives of a deceased employer."

The term "workman" or "employee" is defined in sub-division 2 of the same section in the following language:

" 'Workman' or 'employee' means a person who has entered into the employment of, or works under contract of service, express or implied, or apprenticeship, for an employer, except as hereinafter specified."

Sub-division (a) of sub-division 3 of the foregoing section is

exclusive in terms, but, by implication, inclusive also. We quote as follows:

"3. The following persons shall not be deemed 'workmen' or 'employees':

a. A person whose employment is purely casual and not for the purpose of the employer's trade or business."

A person whose employment is purely casual and not for the purpose of the trade or business is neither a "workman" nor an "employee" within the meaning of the statute. Clearly, the appellee Coleman's Lunch comes within the contemplated definition of the term "employer," but, if the employment of appellant was purely casual, without more, his injuries are not compensable. This is true under each of the sections of the statute cited above. The industrial commissioner found that the employment was purely casual in nature, but that this fact alone did not present a legal ground for denying compensation. The legal conclusion implied in this finding and conclusion of fact by the industrial commissioner are in harmony with the prior holdings of this court. Pfister v. Doon Electric Co., 199 Iowa 548, 202 N. W. 371; Eddington v. Northwestern Bell Tel. Co., 201 Iowa 67, 202 N. W. 374; Oliphant v. Hawkinson, 192 Iowa 1259, 183 N. W. 805, 33 A. L. R. 1433.

The reason supporting the finding of the industrial commissioner at this point is that the employment may also have been for "the purpose of the employer's trade or business." If so, then clearly, under the language of the statute and the well-settled rule in such cases, the injuries are compensable.

Was appellant's employment, although purely casual in nature, not for the purpose of the trade or business of the employer? This is the vital question in the case.

It is provided by section 2818 of the Code of 1931 that the side walls and ceilings of every restaurant shall be of material so that they can be washed clean, and they shall be kept well limed and washed, and by section 2824 that the walls and ceilings shall be kept in a thoroughly clean condition.

The statutes cited make it the legal duty of restaurant keepers, as a part of the equipment, and for the purpose of the trade or business, to maintain and preserve cleanliness in the respects designated. There is, no doubt, some diversity in the holdings of courts in other jurisdictions as to just what constitutes employment for

the purposes of a trade or business. The term "employer," as defined by the statute, is a broad and comprehensive one. The exception, which excludes a person working in a certain capacity, from the statutory definition of "workman" or "employee," is defined only as the language employed generally accomplishes this result. There is a broad sense in which every kind of service rendered by a person working upon or about a building, or performing services on the inside thereof, used for business purposes, is for the purpose of the employer's trade or business. The language of the statute does not, however, permit the application of so broad a definition in determining just what service comes within the "purpose of a trade or business." Cleanliness is indispensable to the highest success of a restaurant keeper's business. The legislature, as already appears, has imposed certain strict duties upon him in this particular.

The length of the term of employment does not alone determine its character. Although casual, if for the purpose of the trade or business, a person employed therein is a "workman" or "employee" and this is true whether the employment is for a specific task or of indefinite and uncertain duration.

The Supreme Court of Michigan in Holbrook v. Olympia Hotel Co., 200 Mich. 597, 166 N. W. 876, speaking to this question, said:

"It is clear that the law contemplates that there may be an employment of labor, not in the usual course of the business of the employer, in which employment the risks of injury not occasioned by the employer's fault are assumed by the workman. It would seem that occasionally renovating the rooms of a building, or ·the building itself, owned and occupied by the owner as a home, with paint or paper or both, is not in the usual course of the trade, business, profession or occupation of the owner, unless he is himself in the business of painting and decorating. No reason can be found for concluding that the owner of a hotel is pursuing his business, within the meaning of the law, when he causes the rooms to be occasionally painted and decorated, although it is usual to have work of that nature done from time to time."

The District Court of Appeals of California in Blood v. Industrial Acc. Com., 30 Cal. App. 274, 157 P. 1140, held that one engaged to do a job of painting was not employed in the usual course of trade or business. It was held in Maryland Casualty Co. v. Pillsbury, 172 Cal. 748, 158 P. 1031, that one employed to repair a

tractor used on a ranch in plowing, pulling wagons, and for other purposes in connection with the farming operations was not employed for the purpose of a trade or business. The court said:

"If the view that this employment was in the usual course of the occupation of Mr. Harris as a farmer be correct, the distinction sought to be established by the statute has no force whatever, because, following to its logical limit the argument of counsel that 'it was part of Mr. Harris' business to have his tractor put in order for use,' we would have to say that the man who made his clothing for use on the farm, the cobbler who mended his shoes, the locksmith who, at a shop in town, filed a key for the lock on the smokehouse door, and countless others who rendered services of any sort relating to the conduct of his farm were engaged in his occupation. We do not see how such meaning may be attributed to the words of the statute. It is true that the tractor had been used and was intended for use on the farm."

See, also, State v. District Court, 138 Minn. 103, 164 N. W. 366.

Obviously, there is no exact test by which the answer to the question, what constitutes employment in the usual course of one's trade or business, may be ascertained, and each case must, in large measure, be determined according to its own facts. Perhaps the rules previously discussed in prior opinions of this court are as accurate and as well adapted to the purpose of defining the term as any. Oliphant v. Hawkinson, 192 Iowa 1259, 183 N. W. 805, 33 A. L. R. 1433; Pfister v. Doon Electric Co., 199 Iowa 548, 202 N. W. 371.

The term "business" has been defined as the habitual or regular occupation that a person is engaged in, with a view to earning a livelihood or gain. Marsh v. Groner, 258 Pa. 473, 102 A. 127, L. R. A. 1918F 213; Nelson v. Stukey, 89 Mont. 277, 300 P. 287, 78 A. L. R. 483.

The last cited case involved an action by an injured employee against his employer to recover damages for injuries suffered while performing services under such employment. The statute of Montana, in which state the action arose, covered the case fully. The plaintiff was employed by the defendant as foreman to supervise the work of constructing an addition to an apartment house owned and operated by said defendant. One of the defenses interposed was that the employment was casual in nature, in which case recovery

could not be had.  The defendant was a dentist engaged in the business of his profession.  He also operated the apartment house on which the plaintiff was employed when injured.  The court held that the employment was not casual and that it was in furtherance of the employer's business.

The defendant in Johnson v. Asheville Hosiery Co., 199 N. C. 38, 153 S. E. 591, operated a factory for the manufacture of hosiery. To make the room in which the operators worked convenient and reasonably safe, the lighting facilities were of great importance. It was decided by the employer that, if the ceiling were painted with white or light-colored paint it would facilitate the work and add safety to the operators.  The claimant was a painter, and, after being employed to make some repairs about the plant, was engaged to paint the factory.  While engaged in painting the ceiling of the room in question, he was injured.  The court held that he was employed in the usual course of the employer's trade or business.

The facts involved in Walker v. Ind. Acc. Commission, 177 Cal. 737, 171 P. 954, L. R. A. 1918F 212, are somewhat similar to the facts in the case before us.  The employer was the keeper of a lodging house in which a chambermaid was continuously employed to keep the rooms and hallways clean.  Being unable to accomplish this purpose alone, the claimant was employed to assist in the taking up of carpets and matting and in cleaning walls, transoms, windows, and curtains.  Cleanliness of the rooms and hallways was essential to the proper conduct of the employer's business.  While engaged in such service, the helper was injured.  The court held that the injuries occurred in the usual course of the business of the employer, and the award of compensation under the workmen's compensation laws of California was affirmed.

Cleanliness of the kitchen and other departments of the restaurant in which appellee was employed was not only essential to the business, but its maintenance was, in part at least, a statutory duty. Testifying on this subject, the employer said:

"I have my walls and ceilings washed whenever it is necessary. Sometimes it would be twice a year. Sometimes, in speaking about this case, it was washed twice in about a month.  In other words, I wash it when it needs it.  It was washed on account of the fire.  I consider washing the ceiling a vital part of my business, the same as washing the dishes, the linen and silverware.  It all has to be done, and the cooking clean and the floors clean.  I had painting done.

You don't call that general work just the same as painting, having the walls washed and cleaned."

There is in the various states some diversity in the language of workmen's compensation laws. This necessarily requires some diversity of holding. The present may be a border line case but the evidence, we think fully warranted the finding of the industrial commissioner that appellant was a "workman" or "employee" within the definitions prescribed in section 1421 of the Code. The services being performed at the time the injuries were received were, it is true, more or less casual in character, in the sense at least that they were not continuous and were performed only at intervals as the necessity might arise. This is true of many services which, all would concede, are necessary for the purpose of the trade or business. While the finding and conclusion of the industrial commissioner involved both a question of fact and a question of law, they are not so separate and distinct in character as to permit a contrary decision by this court upon the theory that only a question of law is presented. The purpose of workmen's compensation laws has often been stated in the prior decisions of this court. It is the conclusion of the court, without further elaboration, that the services performed by appellant were for the purpose of the trade or business of his employer. The judgment of the district court must therefore be, and it is, reversed. —Reversed.

ALBERT, C. J., and MITCHELL, ANDERSON, and KINTZINGER, JJ., concur.