Fᴇᴅ Tᴇᴘᴇsᴄʜ, Appellant, v. Jᴏʜɴ R. Jᴏʜɴsᴏɴ, Appellee.

No. 45411.

Mᴀʀᴄʜ 11, 1941.

Hart & Hart, for appellant.

Arthur H. Jacobson and G. Belvel Richter, for appellee.

Gᴀʀꜰɪᴇʟᴅ, J.—Code section 1421 provides in part:

"3. The following persons shall not be deemed 'workmen'

or 'employees': *a*. A person whose employment is purely casual and not for the purpose of the employer's trade or business."

The industrial commissioner, reversing the deputy commissioner to whom the matter was originally submitted, held that appellant's employment was "purely casual" and "not for the purpose of the employer's trade or business." The trial court affirmed the commissioner. Unless this finding is not supported by competent evidence, this court will not disturb it. If the evidence presents a question of fact which the court should submit to a jury, if the case were triable to a jury, then the determination of the facts by the commissioner is conclusive upon the courts. Sinclair v. McDonald, 229 Iowa 1234, 1236, 296 N. W. 362; Smith v. Soldiers' and Sailors' Hospital, 210 Iowa 691, 694, 231 N. W. 490, 492.

Appellee was a rural mail carrier residing in Waukon. He engaged appellant, a carpenter, to reshingle the roof of his private garage situated on the same lot with the residence in which he and his wife lived. Appellee rented out no part of his house or garage. The garage held two cars, one of which was principally used by appellee on his mail route, and the other for family purposes. After appellant had applied a few rows of shingles and on the first morning he worked, he fell to the ground, sustaining a serious injury to his back. The shingling was completed by another workman in two days. Appellant testified he was employed not only to reshingle the garage roof but also to install two new sets of overhead doors which would turn up under the ceiling when opened. Appellee flatly denied any employment regarding the doors. The industrial commissioner found that even if the doors were to be hung, the entire job would not take to exceed four or five days. Appellant's testimony was, however, that it would have taken him two weeks to shingle the roof and install the doors. This finding of the commissioner as to time we believe is a fair deduction from the evidence. Two or three years before, appellant had helped shingle appellee's house. Four or five years before, appellant had put on a porch door and in 1928 he had built a table in the kitchen of appellee's house.

The term "casual" is in common use. As Justice Evans observed when speaking for the court in Pfister v. Doon Elec. Co., 199 Iowa 548, 551, 202 N. W. 371, 373:

"It is less difficult to recognize such 'casual' employment when it is presented in a given case than it is to lay down a rule or definition that can become decisive of every case."

In Bedard v. Sweinhart, 186 Iowa 655, 657, 172 N. W. 937, the word "casual" is defined as " 'coming without regularity; occasional; incidental;' 'coming at uncertain times or without regularity, in distinction from stated or regular;' 'a laborer or an artisan employed only irregularly.' "

See, also, for definitions of the term, "casual," Herbig v. Walton Auto Co., 191 Iowa 394, 182 N. W. 204; Porter v. Mapleton Elec. L. Co., 191 Iowa 1031, 183 N. W. 803; and Gardner v. Trustees, 217 Iowa 1390, 250 N. W. 740.

As to the purpose of the statute excepting "purely casual" employment from the benefits of the compensation act, this court said in the Pfister case, supra (page 551 of 199 Iowa, page 373 of 202 N. W.):

"The purpose of the proviso * * * was to narrow or to withdraw the application of the broader terms of the statute from those 'casual' employments which are more or less incidental to the daily life of everybody."

We do not feel justified in disturbing the finding of the commissioner that the employment of appellant was purely casual. In arriving at this conclusion we give some weight to the fact that appellee's business, if it can be called such, of carrying mail is not one in which appellee ordinarily employed labor. We quote again from the Pfister case, supra (page 552 of 199 Iowa, page 373 of 202 N. W.):

"It may safely be said, however, that, if an employer is not engaged in a labor-employing enterprise or business, this may be an influential circumstance, tending to establish the 'casual' character of the occasional employments which he may make. Such was the case of Bedard v. Sweinhart, 186 Iowa 655; and also the case of Oliphant v. Hawkinson, 192 Iowa 1259."

That appellant's employment was purely casual within both the letter and spirit of the statute see the cases hereinbefore cited, especially Bedard v. Sweinhart, 186 Iowa 655, 172 N. W. 937, and Oliphant v. Hawkinson, 192 Iowa 1259, 183 N. W. 805,

33 A. L. R. 1433, and, in addition, Dial v. Coleman's Lunch, 217 Iowa 945, 251 N. W. 33, and Tunnicliff v. Bettendorf, 204 Iowa 168, 214 N. W. 516.

But it is not sufficient to exempt appellant from the benefits of the compensation statutes that his employment was purely casual. It must also appear that such employment was "not for the purpose of the employer's trade or business." Unless the employment is both purely casual and outside the purpose of the employer's trade or business it does not come within this exception to the act. The meaning of the statute, in this regard, is thoroughly explained in Gardner v. Trustees, 217 Iowa 1390, 250 N. W. 740.

Appellant argues that his employment was for the purpose of appellee's trade or business; that appellee's business was that of rural mail carrier; that his automobile was necessary in that business; that the car used in his business was kept in the garage; that employment to make necessary repairs to the garage such as reshingling the roof was therefore for the purpose of appellee's trade or business. The written decision of the industrial commissioner indicates that he was of the opinion that carrying mail was not a trade or business within the contemplation of the statute and that appellee, being himself an employee, could not also be an employer. Much of appellant's argument is devoted to an attack upon this reasoning in the findings of the commissioner. We will assume, without deciding, that carrying mail on a rural route is a trade or business and also that appellee, even though an employee of the post-office department of the government, could also be an employer in that business. Nevertheless, we are convinced that the commissioner and the trial court reached the correct result in holding that appellant's employment was not for the purpose of appellee's trade or business.

This court has repeatedly observed that the broad purpose and object of the compensation statutes is to impose upon industrial enterprise the burden and cost of hazards of employment and to make such cost a part of the "overhead" of the trade or business. This is not to say that the act only applies to employees in industrial enterprise. But we are authorized to give some consideration to the fact that appellee was not employing labor in industrial enterprise but for a purpose such as every house-

holder must, at intervals, employ the assistance of others. We are agreed that the connection between appellee's business (assuming it to be such) of mail carrying and reroofing the garage in which the car was stored when not in use on the route is too remote and incidental.

It could scarcely be claimed that reroofing the home in which appellee and his wife resided would be employment for the purpose of his trade or business. Yet it is as necessary that appellee have a home in which to live as that he have a garage in which to store his car. There are few business people who do not use their automobiles in the conduct of their businesses, even if only to go to and from their work. It is probably true, however, that a car is more of a necessity for a rural mail carrier than for many men. A car is a practical necessity, for example, to the average "country doctor." Could it fairly be said that reshingling a private garage of a doctor would be employment for his trade or business simply because he stored the car used in his practice in the garage? We think not. To adopt the reasoning urged upon us by appellant would be to extend the meaning and effect of the compensation statutes entirely beyond their fair scope and would subject countless householders to the burden of compensating for injuries which were in no manner caused by any negligence of theirs.

We have carefully examined the authorities cited to us by appellant. None of them go to the extreme that we are asked to go, nor have we been able by independent search to discover any. Perhaps the principal authority relied upon is Gardner v. Trustees, 217 Iowa 1390, 250 N. W. 740, where this court observed that building a church was for the purpose of the trade or business of the church. As the opinion makes clear (see page 1401) this was entirely unnecessary to the decision (although we are not now to be understood as doubting its correctness) because the employment there was not purely casual and the act applied regardless of whether the employment was for the purpose of the trade or business of the church. We do not regard the Gardner case as in point.

See, as tending to support our conclusion on this branch of the case, Tunnicliff v. Bettendorf, 204 Iowa 168, 214 N. W. 516; Oliphant v. Hawkinson, 192 Iowa 1259, 183 N. W. 805, 33 A. L.

R. 1433; Jackson v. Cathcart, 201 Minn. 526, 277 N. W. 22; Sink v. Pharaoh, 170 Minn. 137, 212 N. W. 192, 50 A. L. R. 1173; Eichholz v. Shaft, 166 Minn. 339, 208 N. W. 18.

We hold there is not sufficient basis for disturbing the decision of the industrial commissioner and the judgment of the district court.—Affirmed.

CHIEF JUSTICE and all JUSTICES concur.