156 So. 633

## TUSCALOOSA COMPRESS CO. v. HAGOOD.

### 6 Div. 588.

Supreme Court of Alabama.

June 21, 1934.

Rehearing Denied Oct. 11, 1934.

Wright, Warren & Searcy, of Tuscaloosa, for appellant.

H. A. & D. K. Jones, of Tuscaloosa, for appellee.

BOULDIN, Justice.

The question of moment in this cause is whether the employee should be denied the benefits of the Workmen's Compensation Law (Code 1923, § 7534 et seq.) upon the ground that he is excluded under the following clause of Code, § 7543: "* * * persons whose employment at the time of the injury is casual and not in the usual course of the trade, business, profession or occupation of the employer."

The business of the employer was the operation of a cotton compress. There was a breakdown in the compress. The compress company got in touch with the manufacturer of compress machinery, arranged for new parts to replace those which were broken, and requested the manufacturer to find a machinist familiar with such machines to assist in making the repairs. Accordingly the plaintiff was engaged, entered upon the work, and, while so employed, fell and received severe injuries. It appears the superintendent of the plant made ordinary repairs or caused same to be made by the regular working force, but plaintiff was called in because of the need of an expert machinist in that line. He was employed merely for the job on an hourly wage.

It will be noted our statute is of that class in which "casual" and not in the "usual course of the * * * business * * * of the employer" are used conjunctively. Both conditions must concur to exclude the employee from compensation. It may be said both terms are interrelated and together define a status of employment outside the field covered by our Compensation Law.

■ Broadly speaking, the test is the relation of the employment in question to the general line of business in which the employer is engaged.

■ Limiting our discussion to cases similar to this, a temporary employment to do a special job by way of repairs on an industrial plant, we observe Callihan v. Montgomery (1922) 272 Pa. 56, 115 A. 889, strongly relied upon by petitioner, involved a statute like unto ours, and facts quite analogous to this case.

The employer was. operating an oil well. He engaged a skilled mechanic for the special job of repairing an engine to run the pump. He entered upon the work and, while engaged therein, was caught in the machinery of the plant and killed.

After reviewing many cases, the court declared: "The casual employment of one, for the performance of an odd job, may occur in conducting a business and still not be within its regular course. For instance, emergency repair work on a machine used in the operation of a business can always be said to take place in the course of that business, as all machinery, at some time or other, is bound to need repair; but such work, if not of a kind usually performed by or under the control of the person conducting the business, would be outside the regular course thereof. * * * While repair work may be considered an important incident to any business using machinery, and, in some cases. may enter into the customary operations of such a business (for example, when men are engaged as regular employees for the purpose of keeping the machinery in order), yet the repairs we are here considering were no part of the regular course of the business conducted by defendant, which is producing oil; they represent merely an odd job, incidental to that business, but not part of the work ordinarily done by or under the control of the employer in this particular case. On the other hand, such repairs might well be classed as within the regular course of the business of plaintiff's deceased husband." Callihan v. Montgomery, 272 Pa. 56, 115 A. 889, 894, 895.

But in the later case of Hauger v. H. W. Walker Co. et al. (1923) 277 Pa. 506, 121 A. 200, 201, the same court said:

"The latter (the employer) was a manufacturer of ice cream and other dairy products, and had, as its factory foreman, one Marlin G. Miller, who, as appellants admit, 'was charged with the duty of keeping the plant in operation,' making 'such small repairs as he could by himself, or, with the assistance of other men in the regular employ of the company, but when there was some major job of repairing to be done, he, as factory foreman, called in' decedent, who was an expert machinist, to assist in doing this character of work. * * *

"It will be noticed that the last clause of this section is in form conjunctive, and hence inapplicable, unless the employment is not only casual, as this was, but also 'not in the regular course of the business of the employer.' Defendant having made the repairing of its machinery a part of the 'regular course of (its) business,' decedent was its employee by the very terms of this section, and plaintiff has the same right as the widow of any other employee who was killed or injured during the 'regular course of the business.' "

The fact that the employment was temporary, one called for only occasionally, or incidentally, was treated as "casual," but liability was imposed, notwithstanding, upon the ground that such repair work was made a part of the employer's "regular course of business." In that case the duties of the foreman touching ordinary and special repairs were like unto those of the superintendent in this case.

We are not impressed that undue emphasis should be placed on maintenance of a regular repair force, or the frequency with which ordinary or extraordinary repairs are required. If in the operation of an industrial plant, consisting much of machinery whose repair is essential to effective operation, the making of such repairs is as truly within the regular course of business as any other part of its operation.

Who would question that a special mechanic employed to install machinery in the construction of a plant is employed in the regular course of business of the employer? One who replaces broken parts and puts a broken-down plant to going is in no less favorable position.

In our own case of Mobile Liners, Inc., v. McConnell, 220 Ala. 562, 126 So. 626, turning on what class of employees should be counted in ascertaining whether the statutory number were regularly employed, this court quoted with evident approval from the case of Holmen Creamery Ass'n et al. v. Industrial Commission of Wisconsin, 167 Wis. 470, 167 N. W. 808, wherein the mechanic was employed as occasion arose to repair buildings used in the creamery business. Repairs were there declared an integral and essential part of every business employing material things in its operation.

In National Cast Iron Pipe Co. v. Higginbotham, 216 Ala. 129, 112 So. 734, 736, the clause now under construction was directly involved and construed. Claimant was a painter engaged in painting the employer's houses provided for its employees. This was declared an "incidental and necessary repair work," and such employee entitled to compensation. The same liberal construction was given to this as to other provisions of the Workmen's Compensation Law. See, also, Ex parte Little Cahaba Coal Co. (Baughn v. Little Cahaba Coal Co.), 213 Ala. 596, 105 So. 648.

The trial court correctly found this issue in favor of the employee.

■ We find no difficulty in holding the plaintiff an employee, not an original contractor. He was employed by the hour, the work was on the employer's premises, was at the time of the injury in co-operation with the superintendent, planning the means of dismantling the machinery so far as necessary to remove the broken parts and install the new. It is easily inferable that the appliances and labor of the employer were to be used under the general direction of the superintendent.

The mere fact that the employee was an expert, engaged for his special knowledge, and presumably his advice was to be followed in the manner of doing the work, did not put him in the role of an original contractor. The general principles defining an original contractor within the meaning of this statute have been often announced. General Exchange Ins. Corporation v. Findlay, 219 Ala. 193, 121 So. 710; Norwood Hospital v. Brown, 219 Ala. 445, 122 So. 411; Sloss-Sheffield Steel & Iron Co. v. Crim, 219 Ala. 148, 121 So. 408; Martin v. Republic Steel Co., 226 Ala. 209, 146 So. 276; Birmingham Post Co. v. Sturgeon, 227 Ala. 162, 149 So. 74; Schneider's Workmen's Com. Law, page 284.

It appears the wages of the employee were at the rate of 58 cents per hour. The trial court figured the daily wage at $5.80, or 10 hours per day. This conclusion was justified by the evidence that he was paid $5.80 for the day's work, notwithstanding he was injured before the day's work was done. But if figured at 8 hours per day, and 5½-day week, the allowance of maximum compensation of $12 per week would be correct.

■ The court found a temporary total disability for a period of 38 weeks, followed by a permanent partial disability, the extent of which was not ascertained. Compensation was awarded for the period of total disability only.

It is insisted that in case of temporary total disability, followed by permanent partial disability, the rule declared in Ex parte A. Diniaco & Bros. et al., 207 Ala. 685, 93 So. 388, Ex parte Jefferson Slag Co. et al., 209 Ala. 263, 96 So. 138, and Galloway Coal Co. v. Stanford, 215 Ala. 79, 109 So. 377, forbids the payment for temporary total disability for a longer period than would be payable for a permanent partial disability dating from the date of the injury as defined in above cases.

We do not so construe those cases. Indeed, it is expressly declared: "When compensation is had for the period of total disability, that period, if less, must be deducted from the period allowed for the permanent partial injury, and compensation allowed only for the remainder of that period." Galloway Coal Co. v. Stanford, 215 Ala. 79, 82, 109 So. 377, 379.

Not to allow compensation for the full period of temporary total disability, not exceeding 300 weeks, would strike down the express provisions of Code, § 7551 (a).

Affirmed.

THOMAS, FOSTER, and KNIGHT, JJ., concur.