C. M. (ETHEL B.) BURDICK, PETITIONER-PROSECUTOR, v. LIBERTY MOTOR FREIGHT LINES, INC., RESPONDENT.

Submitted October 7, 1941—Decided March 13, 1942.

Before BROGAN, CHIEF JUSTICE, and Justices CASE and HEHER.

For the prosecutor, *McDermott, Enright & Carpenter* (*Carl S. Kuebler*, of counsel).

For the respondent, *John W. Taylor*.

BROGAN, CHIEF JUSTICE. *Certiorari* was allowed to review a judgment of the Compensation Bureau which dismissed the claim petition of the prosecutor. The writ goes directly to the judgment of the Bureau, the accident having happened out of the state (*Cf. R. S.* 1937, 34:15-66). The question is whether the petitioner's decedent, at the time he met his death, was an "employee" in the statutory sense. If he was, the respondent concedes that his death arose out of and in the course of the employment.

The decedent, Charles M. Burdick, was in the trucking business in Erie, Pennsylvania. As such truckman he operated tractors, vans and gasoline tank wagons and had in his employ several helpers and drivers. On May 10th, 1940,

together with a helper, Lawrence Hanner, an employee of ten years standing, Burdick delivered a truck load of goods in the New York area. There he learned from Carl Myatt, a freight loader in his employ, that the respondent herein, Liberty Motor Freight Lines, Inc. (hereinafter referred to as "Liberty") wanted a shipment of oil taken from Newark to Buffalo. Thereupon the decedent and Hanner drove to Newark "to pick up a load of oil * * * and deliver it in Buffalo." Burdick's truck was taken to Bayway, New Jersey, by employees of Liberty, where it was loaded with oil, and returned to Newark, whereupon it was taken over by Burdick and Hanner who then started on the trip to Buffalo, Burdick doing the driving. En route, at or near Ramapo, New York, a tire on the trailer blew out. The decedent and Hanner drove up to a gas station to put on a substitute tire and while Mr. Burdick was putting air into a spare tire, it blew out and he received injuries from which he died the following day.

The petition was dismissed, the learned referee holding that the decedent at the time was an independent contractor and therefore not an employee within the provisions of the Workmen's Compensation Act. The respondent and the decedent, at the time of the hiring, entered into an agreement, in writing. It was labeled "Lease of motor vehicle equipment for one trip" and therein the decedent (referred to in the agreement as the lessor) leased to Liberty the said vehicle for one trip from Newark to Buffalo, the equipment to be under the complete control of Liberty "to the exclusion of all parties whomsoever including the lessor." Compensation was stipulated at so much per ton, the lessor to furnish qualified drivers and helpers who were to be subject to the control, management, direction and orders of the lessee (Liberty), said drivers and helpers to be considered as employees of the lessee and not of the lessor. Provision was made in the contract for workmen's compensation insurance, social security and unemployment insurance.

In addition to urging the dismissal of the petition on the independent-contractor theory, it was further contended by Liberty, as a second point, that the employment, if any, was casual. This second point will have our consideration later.

The Workmen's Compensation Act defines the terms "employer," "employee" and "casual employment" as follows: "* * * 'Employer' is declared to be synonymous with master and includes natural persons, partnerships and corporations; 'employee' is synonymous with servant, and includes all natural persons, who perform services for another for financial consideration, exclusive of casual employment, which shall be defined, if in connection with the employer's business, as employment the occasion for which arises by chance or is purely accidental; or if not in connection with any business of the employer, as employment not regular, periodic or recurring." Those in casual employment therefore are, by the statute, excluded from the benefits of the Workmen's Compensation Act, which enure only to those who are employees within the statutory definition.

Under the provisions of agreement for the leasing of the motor equipment, we cannot say that the decedent was not an employee within the intendment of the statute. Our conclusion is the exact opposite. Many of the normal conditions of employment, it is true, are not present, viz., the deceased and his helper were not carried on the payroll of Liberty; the compensation of the deceased was not definite and fixed, rather it was indeterminate, the undertaking being one that might result in a profit or a loss to Burdick; the helper's wages were to be paid by Burdick, not by Liberty, unless it chose to do so, in which event reimbursement was to come from Burdick. There was a like provision in the agreement as to the cost of the trip for gasoline, garaging, &c. Such conditions are not usual in an employer-employee relationship and yet the parties, by their agreement, in unmistakable terms determined the status of the deceased and his helper and under that agreement those who undertook delivery of the oil for Liberty were designated as its employees. It is our duty to enforce the contract as made; we may not rewrite it or interpret it contrary to its plain terms. On the statement prepared by Liberty, called "truck hire settlement," deduction was made by Liberty of 3% of the sum paid for the delivery of the oil to cover "social security" and "unemployment compensation" of both deceased and his helper. It is said that

Burdick, owner and lessor of the equipment, covenanted to supply drivers and helpers (members of the Brotherhood of Teamsters); that the parties contemplated that such operators would be men in his employ and that when Burdick undertook the driving himself he could not be an employee of himself and therefore could not qualify as employee under the agreement because he was not a member of the Teamsters' Union. We do not ascribe any importance to this argument because Liberty knew that the deceased undertook the driving himself. He was listed on the statement "Truck Hire Settlement" as owner of the equipment and operator as well. The respondent may not raise that question here.

The Deputy Commissioner in the Bureau considered that the evidence and the exhibits made the decedent out to be an independent contractor. Again, we cannot agree but rather think that the evidence in the case, particularly the "lease agreement," negatived the idea of independent contractor. The written agreement between the parties provided that the decedent's equipment would be leased by Liberty for this particular trip in the latter's business as an interstate or intrastate common carrier of freight by motor vehicle under the franchises which it holds, and that the equipment should be, while the lease was in effect, under the complete control of Liberty to the exclusion of all other parties including Burdick, the owner; that the lessor should furnish sufficient help; that all drivers and helpers on the equipment *shall at all times be subject to the control, management, direction and orders of Liberty,* and in the operation of the equipment the drivers and helpers shall be considered as *employees* of *Liberty* only and *not employees* of the lessor. Here Liberty was completely the master, *i. e.,* the employer in the statutory sense, and Burdick, who drove the equipment, was completely the servant, *i. e.,* the employee in the statutory sense. Other incidents of the agreement concerning compensation for the services, workmen's compensation insurance, social security and unemployment insurance, and the like, fortify this conclusion if support was needed. The equipment and the operators were under the complete control of Liberty—even the route to be taken was prescribed. The witness, Hanner, testified as fol-

lows: "They [Liberty] told you what route to follow or routes to follow and where to register."

We think that the decedent was the "employee" of the respondent in the statutory sense at the time of his accidental death and that the conclusion of the Bureau that he was an independent contractor was erroneous. (Compare *American Carrier Corp.* v. *Avigliano,* 123 *N. J. L.* 490.)

There remains the question of casual employment. If the deceased was a casual employee, the petitioner and the other dependents are not entitled to compensation under our statute. It was not the burden of the petitioner to present evidence that would disprove casual employment. The burden of proving that the employment was casual rests upon the employer. *Cf.* 2 *Workmen's Compensation Law, Schneider* (2d ed.) 1858, § 537; also 71 *C. J.* 1065, § 872; *Consumers Mutual Oil Producing Co.* v. *Industrial Commission,* 289 *Ill.* 423; 124 *N. E. Rep.* 508; *Victor Chemical Works* v. *Industrial Board of Illinois,* 274 *Ill.* 11; 113 *N. E. Pep.* 173; *Domer* v. *Castator,* 82 *Ind. App.* 574; 146 *N. E. Rep.* 881. The dearth of authority on this point leads us to infer that in other states perhaps the burden of proving casual employment is assigned to employers by statute. But, without pausing to make this investigation, we think that such burden belongs to the respondent. The general rule in this state is that an affirmative defense, and we regard this as such, must be proved by him who advances it.

There is nothing in the testimony to indicate how the "occasion" for Burdick's employment for this carriage of freight from Newark to Buffalo arose. It is the plainest of inferences that the employment was connected with the employer's business, but there is nothing that persuades us that it arose "by chance" or was "purely accidental." We may not speculate about the matter. We think that the issue of casual employment was raised by the respondent's answer, wherein it was denied that decedent "was an employee of the respondent within the meaning of the terms and provisions of the Workmen's Compensation Act." In this posture of the matter we think the case ought to be sent back to the Bureau and that the respondent should have an opportunity

to present its defense. The finding that the decedent was an independent contractor is set aside. The petition was dismissed at the end of the petitioner's case. That dismissal, similar to a nonsuit in a common law action, is reversed. The case is remanded so that the parties may produce evidence on the issue of casual employment. Costs will abide the outcome.