WARREN M. GARRISON, Appellant, v. LOUIS GOETLER, doing business as R. & L. GROCERY, Appellee.

No. 46417.

MARCH 7, 1944.

542

Emmert, James, Needham & Lindgren, Robert H. Bush, and Lorna L. Williams, all of Des Moines, for appellant.

A. J. Myers, of Des Moines, for appellee.

BLISS, J.—The appellee owned and operated a building and business, under the name of the R. & L. Grocery, in a residence district of Des Moines. His residence is on the same lot as the grocery store but in a separate building. The store building was used solely for the retail grocery and meat business. Some time previous to the occurrence involved herein the appellee had a steady employee in the store, but thereafter the store was operated by him with occasional help. He testified that his wife had an interest in it and waited on customers.

The appellant, who lived close to the store, was in the employ of the Iowa Roofing Company, a concern engaged in the roofing business. He apparently was a patron of the store. The appellee had spoken to him several times about the roof of the store building leaking. It had a ridge roof shaped like an inverted letter "V." The appellee pointed out to appellant the places where the roof leaked, and the rain came through on the inside of the store over the shelves of merchandise, the counter, and at other places. The ceiling and the paper on it were spotted and discolored where the rain had been leaking through. Eventually the plaster would be ruined and fall, according to the testimony.

On or about October 7 or 8, 1941, appellant was making some purchases in the store, and appellee again mentioned about

the roof leaking and asked appellant to repair the roof. The latter stated that he had some time off from his regular work and would do the repairing that afternoon. Appellee asked him how much the work would cost, and appellant told him that it would depend upon the grade of material he used but the cost would probably run around $12. The only understanding they had about the labor was that it would run from $3 to $6, depending upon the time used. Appellant received 82.5 cents an hour at his regular work. Appellee furnished and paid for the roofing material and the nails. He also furnished the ladder. There was a leak around a soil pipe, and appellant put some plastic cement about the pipe at appellee's request. The north side was completely reroofed except for two strips. As appellant was going up the ladder, on the south side of the roof, carrying a forty-pound roll of roofing, and had stepped on the top rung of the ladder, one of the side pieces of the ladder buckled at that point, because of an old break, throwing appellant to the cement sidewalk below and injuring him. All of the work was done during that afternoon. Appellant did the work on his own time and not as an employee of the Iowa Roofing Company.

In his application for arbitration the appellant alleged the fact of his employment, the work he did, and his injury, in substance, as stated above. The appellee, in his answer, admitted that the work was done and the injury received, but alleged as defenses that (1) appellant was an independent contractor (2) the employment was purely casual and (3) was not for the purpose of the appellee's trade or business. The commissioner found against appellee on the first defense and for him on the second and third defenses. The appellee has not cross-appealed from the ruling adverse to him. Since a determination of the third defense and a holding that the appellant's employment at the time of his injury was for the purpose of the appellee's trade or business are decisive of this case, we do not pass upon the casualness of the employment. There is no dispute about any material fact.

-- I. Section 1361, chapter 70, of the 1939 Code, entitled "Workmen's Compensation," provides that the "chapter shall not apply to * * * 2. Persons whose employment is of a casual nature." This section has not been changed by the legislature

since the enactment of the act by the Thirty-fifth General Assembly. (Chapter 147, section 1 (a); section 2477-m (a), 1913 Code Supplement.)

Section 1421, Code of 1939, provides:

"* * * 2. 'Workman' or 'employee' means a person who has entered into the employment of, or works under contract of service, express or implied, or apprenticeship, for an employer, except as hereinafter specified. 3. The following persons shall not be deemed 'workmen' or 'employees': a. A person whose employment is purely casual and not for the purpose of the employer's trade or business."

The language as it appears in the exception (a) is just as it appeared in the original enactment, Acts of the Thirty-fifth General Assembly, chapter 147, section 17 (b); section 2477-m16 (b), 1913 Supplement. The Thirty-seventh General Assembly, chapter 270, section 10, made a decided change in exception (a) by striking out the word "and" after "casual" and substituting "or." The Fortieth Extra General Assembly (House File 42, section 61; section 1421 (3a), Code of 1924) resubstituted "and" for "or," so that the exception now appears as it was originally enacted.

Sections 1361 and 1421 (3a), Code, 1939, must be read together, although the latter section controls and the effect is as though it stood alone.

As the exception is now worded, one who seeks the benefit of its exclusionary provisions, as does the appellee, must establish that the employment involved is both purely casual and outside the purpose of the employer's trade or business. Tepesch v. Johnson, 230 Iowa 37, 40, 296 N. W. 740; Gardner v. Trustees of M. E. Church, 217 Iowa 1390, 1396, 250 N. W. 740.

The only question for determination on this appeal is, Was the appellant a person whose employment or work was, at the time of his injury, "for the purpose of the employer's [appellee's] trade or business"? If it was, then the judgment must be reversed. The application of the exception clause found in all definitions of the word "employee," in all Workmen's Compensation Acts, has troubled the courts of this country and of England since their enactment. While there is much lack

of harmony in the decisions of all of these courts, some of it is more apparent than real, because of the differences in the statutory statements of the exception.

The English Compensation Act, which was enacted in 1897 and has been the model after which all similar legislation in this country has been patterned, in its definition of "employee" or "workman," excludes "a person whose employment is of a casual nature *and who is employed otherwise than for the purposes of the employer's trade or business."* (Italics ours.) [Public General Acts, Edward VII, 1906, chapter 58, section 13.] Of this section, the Connecticut court, in construing an identical section in the Compensation Act of that state,- Fox v. Fafnir Bearing Co., 107 Conn. 189, 193, 139 A. 778, 779, 58 A. L. R. 861, said:

"This language has been construed in numerous English decisions with results that are far from harmonious, and an English judge has said that it was 'one of the most difficult sections of the Act.' "

Most of the legislatures in this country, in enacting workmen's-compensation legislation, have departed quite distinctly from the language of the exception in the English act. They have used, instead of the italicized words, language substantially as follows:

"A person whose employment is casual *and not in the usual course of the trade, business, profession, or occupation of his employer."* (Italics ours.)

It needs but a reading of the italicized portions of these two quotations to know that the latter exception is more restrictive than the first. In other words, under a reasonable construction of the latter exception, more claimants for compensation will be excluded by it than will be excluded under the reasonable and plain import and intendment of the language of the first exception—the Iowa, Connecticut, and English exception. Such is the conclusion of the Minnesota court. In speaking of this exception in the Minnesota Compensation Act, the wording in which is identical with that in the last-above-noted exception, that

court, in State ex rel. Lennon v. District Court, 138 Minn. 103, 105, 164 N. W. 366, 368, said:

"The words 'usual course' must be regarded as more restrictive than the language employed in the Connecticut and English acts. This is the view taken by the California courts in London & Lancashire G. & A. Co. v. Industrial Acc. Com., 173 Cal. 642, 161 Pac. 2, and La Grande Laundry Co. v. Pillsbury, 173 Cal. 777, 161 Pac. 988."

In Carlson v. Miller, 118 Conn. 367, 371, 172 A. 872, 874, the court, in speaking of the exception in the Connecticut act and distinguishing it from the exception in the Pennsylvania act, stated that the words "regular course of the business" was "a more restrictive clause than that in §5223 of our statutes."

To define the terms "course of business," "usual course of business," or "regular course of business," is a difficult thing to do with any certainty or satisfaction. It is largely merely the opinion of the individual definer. This court, in Dial v. Coleman's Lunch, 217 Iowa 945, 949, 251 N. W. 33, 35, said:

"Obviously, there is no exact test by which the answer to the question, what constitutes employment in the usual course of one's trade or business, may be ascertained, and each case must, in large measure, be determined according to its own facts."

The Pennsylvania Compensation Act, in this particular exception, uses the words "regular course of the trade, etc." of the employer. In Callihan v. Montgomery, 272 Pa. 56, 72, 115 A. 889, 895, a case frequently cited by those courts which give a strict construction and narrow limitation to the terms "usual" or "regular course" of trade or business, in defining and applying the terms, said:

"The legislature evidently intended, by the use of the words 'regular course,' to give them some definite significance and the most natural meaning is that they refer to the normal operations which regularly constitute the business in question, excluding incidental or occasional operations arising out of the transaction of that business, such as, now and again, repairing the premises, appliances or machinery used therein."

In other words, courts, following this strict interpretation, hold that the employment or work is excluded by the exception unless it is an actual, integral, and operative part of the usual, customary conduct of the business or industry, whether it be manufacturing, merchandising, or any other employment within the act. Such construction or interpretation would exclude any workman not engaged in the very process and part of the business carried on, even though he was doing construction, repair, renovation, or preservation work essential or beneficial to the business. Such a construction excludes a casual workman doing this above-mentioned work, unless the employer keeps regular employees who do the same kind of work or makes it a part of the normal operation of his business. That is the holding of the Callihan case and like decisions, one of the latest being Miller v. Farmers Nat. Bk., 152 Pa. Super. 405, 33 A. 2d 646.

It is clearly apparent that the language ''for the purpose of the trade or business'' is much broader and more inclusive than the words ''within the usual or regular course of the trade or business.'' The first expression includes everything that the latter includes, as the Callihan case construes the latter. Work done in the ''usual course'' necessarily would be work done ''for the purpose'' of the business, but work done ''for the purpose'' of the business might very well not be ''within the usual course'' of the business, as construed in the Callihan case. This distinction is noted by the Connecticut court in Carlson v. Miller, supra, 118 Conn. 367, 372, 172 A. 872, 874, where the court said:

''So also, in Ringwood v. Grand Trunk Pacific Ry. Co., 7 Alberta, L. R. 226, 17 D. L. R. 202, where a contractor had undertaken to put gravel on the approaches of the defendant's railway tracks to the highways and one of his employees was injured in doing that work, Chief Justice Harvey said that the plaintiff's work was 'for the purposes' of the railway company but not work in the way of the company's business, which was the running of trains.''

Repairing the leaky roof of a grocery-store building may not be a part of the everyday operation of the usual course of the grocery business, and repairing a necessary machine in any

industry may not be a part in the operating process of the business, yet they are both essential or in furtherance of the proper conduct of those businesses, and they are "for the purpose" of those businesses.

We must presume that when the Thirty-fifth General Assembly followed the English Compensation Act in the wording of what is now Code section 1421 (3a), when the great majority of the states were departing from that language and were using the more restrictive words "usual course," its purpose in using the broader term was to benefit the workmen; and to lessen the number of them who would be excluded by the exception to its definition of the word "employees." Certainly, when the Fortieth General Assembly, in its extra session, struck out the word "or" in that exception and resubstituted the word "and," it must be said that such was its intention.

It must be kept in mind that this court and all courts have uniformly held that the compensation act and its various sections, while not to be given an unreasonable or strained construction to meet the exigencies of a particular case, nor to be amended by judicial construction (Pappas v. North Iowa Brick & Tile Co., 201 Iowa 607, 613, 206 N. W. 146), should be given, because of the highly remedial character of the legislation, its humanitarian and economic purposes, and the evils sought to be remedied, a broad and liberal construction, in order to accomplish its intended purposes. Rish v. Iowa Portland Cement Co., 186 Iowa 443, 448, 170 N. W. 532; Elks v. Conn, 186 Iowa 48, 56, 172 N. W. 173; Pierce v. Bekins Van & Storage Co., 185 Iowa 1346, 1350, 172 N. W. 191; Bidwell Coal Co. v. Davidson, 187 Iowa 809, 818, 174 N. W. 592, 8 A. L. R. 1058; Yates v. Humphrey, 218 Iowa 792, 799, 800, 255 N. W. 639; Disbrow v. Deering Implement Co., 233 Iowa 380, 9 N. W. 2d 378.

Section 1421(2), 1939 Code, states the broad rule or definition as to who is a "workman" or "employee" under the compensation act. Subdivision 3a of the section specifies a particular type of person who is excluded from that definition. It must also be kept in mind that a statutory exception should be strictly construed so as not to encroach unduly upon the general

rule. In construing the corresponding section and exception in the Alabama Compensation Act, the court, in National Cast Iron Pipe Co. v. Higginbotham, 216 Ala. 129, 132, 112 So. 734, 736, said:

"If there is doubt about an *exception or proviso* in such a statute it must be judged on the assumption that the rule is broader than the exception, and all doubts and implications should be resolved in favor of the rule rather than the exception; that is to say, the latter is strictly construed when it is to modify or qualify comprehensive terms of an enactment." Citing Alabama cases and Eddington v. Northwestern Bell Tel. Co., 201 Iowa 67, 202 N. W. 374.

In the last-cited case, at page 72 of 201 Iowa, page 377 of 202 N. W., Justice Evans, in discussing the particular statute involved herein, said:

"It should always be borne in mind as the polestar of construction of any statute that the *rule* is broader than the *exception;* that the exception is specific, rather than general; and that, therefore, doubts and implications should be solved in favor of the rule, rather than of the exception. The clear objective of the Compensation Act is to protect the employee against the hazards of the employer's trade or business. When the relation of employer and employee is established, and when the employee is subjected to the hazards of his employer's trade or business, and suffers injury therefrom while so engaged in the due course of his employment, the excepting proviso of the statute ought not to be enlarged by difficult or doubtful construction, so as to render such an injury noncompensable."

To the same effect, see 59 C. J. 1092; State v. Praetorians, 226 Ala. 259, 146 So. 411, 412; Wood Bros. Thresher Co. v. Eicher, 231 Iowa 550, 562, 1 N. W. 2d 655; State ex rel. Weede v. Iowa Southern Util. Co., 231 Iowa 784, 830, 2 N. W. 2d 372; Hartford Electric Light Co. v. Federal Power Comm., 2 Cir., Conn., 131 F. 2d 953 [certiorari denied 319 U. S. 741, 63 S. Ct. 1028, 87 L. Ed. 1698]; State v. Christensen, 18 Wash. 2d 7, 137 P. 2d 512, 146 A. L. R. 1302; Yunker v. Abbye Employment Agency, 32 N. Y. S. 2d 715.

While the section involved herein has been before this court a number of times, there are but three cases which may be considered as giving any aid in the decision of this case. These are Gardner v. Trustees of M. E. Church, supra, 217 Iowa 1390, 250 N. W. 740; Tepesch v. Johnson, supra, 230 Iowa 37, 296 N. W. 740; and Dial v. Coleman's Lunch, supra, 217 Iowa 945, 251 N. W. 33. In the first case the court found, as did the commissioner, that the employment in question was not purely casual. This finding was decisive of the case, and the additional remarks of the court that any employment in the construction of the church was for the purpose of the trade or business of the church was dictum, because unnecessary to a decision, and cannot be regarded as a decision of the court on that point. The court, in its opinion, conceded that this determination was dictum (page 1401 of 217 Iowa, page 745 of 250 N. W.). For the reasons just stated, this court, in Tepesch v. Johnson, supra, 230 Iowa 37, 41, 296 N. W. 740, 743, held the Gardner case not to be in point on the question. Concerning the dictum, the opinion states parenthetically, "although we are not now to be understood as doubting its correctness."

In Tepesch v. Johnson, supra, the injured claimant had been employed by a rural mail carrier to repair the roof of the garage at the latter's home, where he kept both the automobile which he used on his route and another family car. We held in that case that, passing the questions of whether a rural mail carrier was engaged in a business making him an employer under the compensation act and whether the claimant was an employee of such an employer, the work in which he was engaged was too remote and incidental to be for the purpose of any such trade or business. The appellant's work in that case was purely casual.

Concerning Dial v. Coleman's Lunch, supra, 217 Iowa 945, 947, 251 N. W. 33, 35, the appellee herein complains that it is not quite clear from the opinion whether the employment was casual or not casual. However, the opinion states that the commissioner found the employment was purely casual in nature, and further states:

"Was appellant's employment, *although purely casual in nature*, not for the purpose of the trade or business of the employer? This is the vital question in the case."

The opinion then proceeds to answer this question. It is our conclusion that the record rightly called for a decision of the question whether the work was for the purpose of the trade or business. Dial had been ordered by the proprietor of the restaurant to wash the inside walls, which had become dirty and greasy from use and from the smoke of a fire in an adjacent building. He was injured a few hours after he began the work. The opinion refers to certain statutes requiring the walls and ceilings of restaurants to be made of such material that they can be washed and kept in a thoroughly clean condition. The proprietor testified that he had the walls and ceilings washed as often as it was needed, and that he considered such washing as vital in his business as washing the dishes, the linen, and the silverware. This court, in reversing the district court and affirming the commissioner, concluded "that the services performed by appellant were for the purpose of the trade or business of his employer."

It is our conclusion that, even in the absence of the statutory requirements as to cleanliness, the judgment of the court must have been rendered as it was, since the injury occurred in performing services for the purpose of the trade or business of the employer.

The decision in the Dial case strongly supports the contention of the appellant in this case. We see no force in the appellee's contention that the Dial decision is not in point because there was no statute requiring the appellee to repair the roof of his store. The record shows that he had become concerned about the leaky condition some time before the repair was made. It was leaking above where his merchandise was placed. The paper was discolored. The plaster was being impaired. Each rain or melting snow would make the conditions worse. The need for the repair was urgent. It might in time become essential to his business. There can be no other reasonable conclusion under the facts than that the employment was for the purpose of the trade or business of the appellee. Neither can there be any other reasonable conclusion respecting the law, in view of the decision in the Dial case, and the numerous decisions of courts of other jurisdictions.

We will refer first to the decisions of the courts of England and of those states which, like Iowa, have retained, with no material change, the wording of the exception in the English Workmen's Compensation Act. These states, in addition to Iowa, are Connecticut, Vermont, and Rhode Island, which are almost identical with the English act, and Wyoming, in whose Workmen's Compensation Act the language of the exception is the same as Code section 1421 (3a).

The Supreme Court of Judicature, Court of Appeal, of Ireland, in the case of Johnston and others v. The Monasterevan General Store Co., 1908, 42 Ir. L. T. 268, 269, affirmed judgment in a case about "on all fours" with the one before us. The foreword of the opinion states:

"Where a casual workman was employed to assist a slater in repairing the roof of a house used solely for the purpose of business, and was killed by falling from the roof: Held, that his dependents were entitled to compensation, inasmuch as the work he was engaged to assist in doing was for the purposes of the employers' trade or business."

The defendant owned the building and conducted therein a drapery, grocery, and hardware business. It was in charge of a manageress, who employed the deceased for a half day to assist the slater repair the roof. "It was her duty to have the premises in proper condition for the carrying on of the business." The helper fell from the ladder, when ascending with material, and was killed. The County Court Judge of Kildare held the work to be casual but for the purposes of the trade or business of the employer. The court, through Sir S. Walker, Bart., L. C., said:

"We are all of opinion that the County Court Judge was right in this case, and that his decision cannot be disturbed. We are satisfied that this man who was employed to assist a slater who was repairing the roof of the house was so employed for the purposes of the employer's business. * * * The premises in question were entirely used for the purpose of the trade or business carried on therein, the upper portion being devoted to the accommodation of the assistants who worked in the

shop: It is of importance that a house used for trade should be in a proper state of repair, and business could not be carried on unless there was a roof over the premises. It is merely a matter of degree whether the repairs were being done to a part of the roof or to the entire roof.''

In Levecque v. Dupuis, 119 Conn. 224, 229, 175 A. 782, 784, a compensation award by the commissioner was reversed by the superior court. The supreme court reversed the latter and affirmed the award of the commissioner. A construction company was under contract to make certain repairs on the steeple of the church and to replace some missing slates on the roof. After it had supposedly completed the job and had been paid in full, the rector who had charge of the property, observing some unfinished work on the steeple and roof, employed the plaintiff to finish the work for a consideration of $20. He fell from the ladder and was injured. The cause was argued before the full court of five. One judge dissented. The court said:

''In the instant case, the commissioner has found the additional fact, not attacked in any way by the appellant, that the Sacred Heart Roman Catholic Church is an independent corporation and exists for the purpose of conducting religious services and saving souls and, incidentally, to maintain the structures and real estate which it owns and uses in connection with these religious services in a suitable condition. In view of this finding of the commissioner that it was part of the business of the corporation to maintain its real estate in suitable condition, we think it must be held that while engaged in replacing a damaged slate upon the roof and effecting repairs to the steeple of the Church, the claimant was employed 'for the purposes of the employer's trade or business' within the meaning of General Statutes, §5223.'' See dictum in Gardner v. Trustees of M. E. Church, supra, 217 Iowa 1390, 250 N. W. 740.

In Carlson v. Miller, supra, 118 Conn. 367, 372, 172 A. 872, 875, the commissioner's award of compensation was reversed by the superior court, and that judgment was reversed and remanded with instructions to affirm the award, by the supreme court. The business of the defendant was to sell meats, vege-

tables, and fruits. He hired plaintiff as a casual employee, and not as an independent contractor, to erect a stand on which to display his goods. While using his employer's saw he was injured. With all judges concurring, in holding the employment to have been "for the purposes" of the trade or business, the court said:

"In the instant case, one of the important features of the defendant's business was the promotion of sales, and the display of goods upon the stand was strictly a part or process in that department of the business. The sawing of the lumber for this stand, a minor operation, while not perhaps strictly a part of the display, was clearly for the purpose of this feature of the defendant's business. We feel that the case comes within the terms of General Statutes, §5223, and that the plaintiff is entitled to compensation."

In Fox v. Fafnir Bearing Co., supra, 107 Conn. 189, 192, 139 A. 778, 779, 58 A. L. R. 861, a compensation award was affirmed by the superior and supreme courts. Plaintiff was an employee of a contractor engaged by defendant, which manufactured ball bearings, to wash the windows of its factory. Under section 5345 of the Compensation Act, injury to such an employee was compensable if the work was " 'a part or process in the trade or business of such principal employer.' " The court held that, while such work was not a "process" of the industry, it was a "part" thereof, and since window washing was an essential part of the maintenance and operation of its factory, and had to do with the maintenance of the factory buildings in good condition for the manufacturing processes there conducted, "if he was doing work which was a part of the employer's business it could not be said that he was employed otherwise than for the purposes of such business."

We find no case from Vermont which helps either appellant or appellee. In Chamberlain v. Central Vermont Ry. Co., 100 Vt. 284, 289, 137 A. 326, 329, an award was denied. The railway company contracted with a third party to saw firewood to be used in its stations. The contractor employed plaintiff as a casual laborer to assist him. He was injured. The Vermont exception reads " * * * 'purely casual or not for the purpose

of the employer's trade or business.' '' The court said that since the employment was purely casual, ''the alternative condition in the exception is immaterial and is not considered.''

The case of Packett v. Moretown Creamery Co., 91 Vt. 97, 99 A. 638, L. R. A. 1918F, 173, cited by appellee, is also not in point, since the decision is based upon the fact that plaintiff was employed by Flynn, the independent contractor (dismissed from the action), and was not an employee, in any sense, of the creamery company.

We have found no case in Rhode Island which is directly in point. Gibbons v. United Electric Rys. Co., 48 R. I. 353, 138 A. 175, 176, if it is applicable, aids the appellant. Compensation was awarded and affirmed. Plaintiff, a casual workman, was temporarily employed to shovel snow off the tracks of defendant. He was exposed for twenty-four hours continuously to extreme cold and lost two toes. Under a statute providing that the word ''employee'' shall not include a person whose employment is of a casual nature, and who is employed otherwise than for the employer's trade or business, the court held that, since the removal of snow was necessary to be performed so that the employer might carry on its business of transportation, the injury was compensable.

In Pope v. Safeway Stores, Inc., 54 Wyo. 266, 287, 91 P. 2d 58, 66, a compensation award was affirmed. Defendant operated chain stores in several western states, selling provisions of all kinds. It usually leased a store building and then remodeled to suit its purpose. Claimant had worked at short intervals for the company at three of its places. The work usually took about ten days or two weeks. At the time of his injury he was working in the Cheyenne store. Local carpenters were hired to do the work at each place. In building a partition between the front and back rooms the plaintiff was injured. The opinion reviews several cases, most of them giving support to its decision. The court commented that, while the work was temporary, it was in connection with remodeling done by defendant at all of its places of business, which ''could not function at all unless fixtures were installed.'' It held that under the record it could not say that there was error in a judgment that ''the claimant's

employment was for the purpose of the employer's trade or business." The appellant in that case relied largely upon Lamont v. Intermountain Realty Co., 48 Wyo. 56, 41 P. 2d 497. The court distinguished it from the Pope case, and noted that the painter who was injured while painting the inside of a hotel "was * * * almost to be regarded as an independent contractor."

We have found no other cases in point construing a section worded like section 1421 (3a). But there are many decisions from courts in states in which the compensation acts use the words "usual course of the trade or business" which hold that employees injured in doing work of a nature, and under circumstances, similar to that done by the appellant herein, or in constructing, repairing, painting, cleaning, or otherwise improving the buildings, premises, or equipment used in the business of their employers, were in the usual course of the business and were entitled to compensation. As we have noted, such cases, since they construe sections more restrictive in their application than section 1421 (3a), and yet allow compensation, necessarily support the appellee's position and contention in this case. With little comment, we will call attention to some of these cases: Wagner v. Wooley, 85 Ind. App. 259, 152 N. E. 856 (employee injured in digging hole and building superstructure for an outside toilet for use of employees and customers of a public garage); Caca v. Woodruff, 70 Ind. App. 93, 123 N. E. 120 (mechanic making repairs on a mill); Board of Commrs. of Greene County v. Shertzer, 73 Ind. App. 589, 127 N. E. 843 (painter decorating interior of county poor farm); J. P. O. Sandwich Shop v. Papadopoulos, 105 Ind. App. 165, 13 N. E. 2d 869 (carpenter employed to construct additional booths in a restaurant); Royal Indemnity Co. v. Industrial Commission, 105 Colo. 25, 94 P. 2d 697 (carpenter employed to do work on Saturday afternoon and Sunday at a branch warehouse of a wholesale grocery store, to alter loading dock, build a roof over it, change certain doors for better ventilation, and to apply strips to celotex panels in the office); Sears, Roebuck & Co. v. Pixler, 140 Fla. 677, 192 So. 617 (plasterer hired to work at night in repairing plaster, on two or three floors of store, costing

$17.65, injured after a few hours' work) ; Gahr v. Strout, 179 Minn. 395, 229 N. W. 340 (painter employed to paint front of defendant's grocery store) ; Johnson v. Asheville Hosiery Co., 199 N. C. 38, 153 S. E. 591 (plaintiff called to repair a spray gun was employed by the hour to paint a ceiling white to facilitate the work and to make the room lighter for the employees) ; Continental Casualty Co. v. Haynie, 51 Ga. App. 650, 653, 181 S. E. 126, 128 [affirmed 182 Ga. 608, 186 S. E. 683] (carpenter temporarily employed to "aid in the alteration, repair and enlargement of the offices of a corporation doing a dairy business, which offices are essential to the successful carrying on of such trade or business in an efficient and modern manner, and who will not be retained after the completion of such carpenter work, comes within the workmen's compensation act as an 'employee' * * * whose employment is 'in the usual course of the trade, business' * * *") ; Marchbanks v. Duke Power Co., 190 S. C. 336, 2 S. E. 2d 825 (claimant hired by one who had a $170 contract to paint 170 metal poles of defendant was doing work essential to maintenance of defendant's business) ; Olsen v. Canter, 93 Ind. App. 150, 176 N. E. 27 (claimant painting inside of building about to be used for defendant's grocery and dry-goods store) ; Sherlock v. Sherlock, 112 Neb. 797, 201 N. W. 645 (employee of independent contractor painting outside of wholesale drug building) ; Fisher v. Manzke, 208 Minn. 410, 294 N. W. 477 (claimant employed to take off screens, wash and put on storm windows on an apartment house) ; Holmen Creamery Assn. v. Industrial Comm., 167 Wis. 470, 473, 167 N. W. 808, 809 (claimant did mason and plaster repair work inside and outside of creamery. The court said: "[Repairs] being an essential and integral part of every business employing material things in its prosecution, no reason is perceived why one employed to make them should not be classed as an employee of the one for whom they are made. They are essential to the successful prosecution of every business whose implements are subject to the corroding touch of time and a usual concomitant thereof.") ; Gross & Bros. Co. v. Industrial Comm., 167 Wis. 612, 167 N. W. 809 (deceased injured while cleaning up debris after repairs made in a packing house) ; Kress & Co. v. Industrial Comm., 38 Ariz. 330, 299 P.

1034 (carpenter doing small repair job on windows of plaintiff's store building to make them work better) ; New Fort Pierce Hotel Co. v. Gorley, 137 Fla. 345, 353, 188 So. 340, 344 (helper aiding engineer in repairing roof of hotel. The court said: ''Certainly, it could not be successfully questioned that keeping a hotel in repair is a necessary incident to the operation of a hotel.'') ; Colosimo v. Giacomo, 199 Minn. 600, 273 N. W. 632 (claimant assisting in repairing and decorating a building to be used as a beer parlor) ; Hill's Case, 268 Mass. 491, 493, 167 N. E. 914, 915 (claimant washing windows of a private day school. The court said: ''The employment was, in our opinion, 'in the usual course of the trade, business, profession or occupation of his employer.' * * * Teaching is not the only business of a day school. Care of its property is part of its occupation.'') ; Gotchy v. North Dakota Workmen's Compensation Bureau, 49 N. D. 915, 194 N. W. 663 (farmer doing repair work on building of elevator company) ; Morehead v. Grigsby and Shannon Bros. Lbr. Co., 234 Mo. App. 426, 433, 132 S. W. 2d 237, 241 (employee of contractor clearing cut-over timberland for lumber company held to be latter's employee. The court said: ''It is obvious that these transactions grew out of its usual business and were for the purpose of augmenting the financial returns and promoting the successful operation of the normal and regular business of Shannon Brothers Incorporated * * *'') ; Utah Copper Co. v. Industrial Comm., 57 Utah 118, 130, 193 P. 24, 29, 13 A. L. R. 1367 (farmer employed to repair irrigation canal by which plaintiff obtained its water for milling purposes. The court said: ''It must therefore, in our judgment, necessarily follow that one employed as was the deceased in making repairs on that canal was engaged in an employment necessary in conducting the usual business of the company.'') ; Chriss v. Compo Board Co., 211 Minn. 333, 335, 1 N. W. 2d 129, 130 (claimant giving casual and occasional attention to the closed plant of defendant was injured picking up scrap iron on the premises. Referring to Minnesota decisions noted herein, the court said: ''These cases are but illustrative of the types of activities which although infrequently performed are nevertheless commonly recognized as a part of a trade, business, or

occupation.''); Carter v. W. J. Dyer & Bro., 186 Minn. 413, 243 N. W. 436 (washing windows); Berry v. Atlantic Greyhound Lines, 30 F. Supp. 188, 191 (public garage mechanic injured while repairing defendant's bus. The court said: "I can but conclude that it is essential to the trade, business and occupation of the defendant that its buses shall be kept in repair, and that the plaintiff being engaged in and about such work, cannot be considered as a casual employee of the defendant within the meaning of the Act.''); Boseman v. Pacific Mills, 193 S. C. 479, 8 S. E. 2d 878 (employee of contractor painting water tank of defendant, essential for its fire protection, held to be an employee in the usual course of defendant's business); Fuller v. Northern States Power Co., 189 Minn. 134, 135, 248 N. W. 756 (railroad car inspector during his spare time painted and cleaned defendant's smokestack. The court said: "Painting the smokestack was a casual piece of work, but it was a necessary part of relator's business. Scraping and oiling it on the inside and painting it yearly on the outside was as necessary to a proper conduct of the business relator was engaged in as the cleaning of the windows in the case of Carter v. W. J. Dyer & Bro., 186 Minn. 413, 243 N. W. 436.''); March v. Bernardin, 229 Mo. App. 246, 76 S. W. 2d 706 (repair of boilers used in coal held incidental to business); Canning's Case, 283 Mass. 196, 186 N. E. 243 (claimant hired to put up steam pipes to increase heat radiation in a room); Cardinal v. Prudential Ins. Co., 186 Minn. 534, 243 N. W. 706 (casual employee doing interior decorating on property owned and rented out); Bosel v. Henderson Co., 167 Minn. 72, 208 N. W. 421 (claimant painting roof of building owned by it and held for rent); Wells v. Lumbermen's Reciprocal Assn., Tex. Comm. App., 6 S. W. 2d 346, 347 (machinist employed to make "repairs being essential and necessary to the efficient and economical operation of the existing business. The repairs were of such a nature as would inevitably be required in the ordinary and usual course of the operation of the plant. The company could not continue to operate its plant indefinitely unless these repairs were made. * * * Such repairs were therefore within the defendant in error's usual course of business.''); State ex rel. Lundgren v. District Court, 141 Minn. 83, 169 N. W. 488 (claimant aided in constructing an addition to the plant of a lumber

company to enable it to handle fuel) ; Storrs v. Industrial Comm., 285 Ill. 595, 121 N. E. 267; Rogalski v. Industrial Comm., 342 Ill. 37, 173 N. E. 813; Kunkler v. Mauck, 108 Ind. App. 98, 27 N. E. 2d 97 (claimants in these three cases engaged in repairing properties kept for rent by their respective employers) ; Raynes v. Riss & Co., 152 Kan. 383, 103 P. 2d 818 (claimant injured in remodeling a building used for servicing, repairing, and storage of trucks) ; Schroeder v. American Nat. Bk., 154 Kan. 721, 725, 121 P. 2d 186, 189 (carpenter making alterations in fixtures in banking building. The court said: "The liability of respondent is not due to the fact that the work claimant was doing was building work, but that it was incidental to the business of the bank.") ; Heffner v. White, 113 Ind. App. 296, 45 N. E. 2d 342 (carpenter remodeling a woodshed into a hoghouse) ; Texas Indemnity Ins. Co. v. Hubbard, Tex. Civ. App., 138 S. W. 2d 626, 629 (claimant removing ice cans for replacement. The court said: "Surely the Legislature, by the amendment referred to, intended to liberalize the act and to remove and eliminate the extremely technical construction that had been placed by our courts on the act in question.") ; Wolfinger v. Spotts, 13 Northumb. Leg. J. 245, 246 (Common Pleas Court), (claimant employed in grocery store to take a sick employee's place, as "a handy man" who did odd jobs about the store, was injured when he was removing snow and ice from the roof of the grocery store building to prevent water from backing into a leak in the roof. Held: "Such employment is not casual within the meaning of the Workmen's Compensation Act, but is within the regular course of the business of the employer.")

Prior to 1917, the California courts uniformly held that repair work was not within the compensation act unless it was customarily done by the employer. Roman Catholic Archbishop of San Francisco v. Industrial Acc. Comm., 194 Cal. 660, 672, 230 P. 1, 5. But in that year the act was amended to make the term "course of the trade, business, etc." include " 'all services tending toward the preservation, maintenance or operation of the business, business premises or business property of the employer.' " The subsequent decisions all so hold. Klumpp v. In-

dustrial Acc. Comm., 107 Cal. App. 733, 291 P. 456; Hendrickson v. Industrial Acc. Comm., 215 Cal. 82, 8 P. 2d 833. Several states have further liberalized the act by striking from it the element of casualness.

The decisions and legislation noted above are illustrative of the general trend of the courts to protect any person working for an employer, within the scope of workmen's-compensation acts, and to compensate him or his dependents, when he has been injured or killed in repair, reconstruction, or renovating work, when such work is essential or to the best interest of the business, trade, or occupation, even though the employer does not make it his practice to do such work in the normal operation of his business.

To make the test of compensability for injury or death to a workman called in to make repairs upon the property of the employer, the fact that the latter does or does not make such repairs in the normal operation of his business is distinctly unfair to the workman and contrary to the purpose and spirit of workmen's-compensation legislation. This is clearly shown by two decisions of the Supreme Court of Pennsylvania: Callihan v. Montgomery, supra, 272 Pa. 56, 115 A. 889, and Hauger v. Walker & Co., 277 Pa. 506, 121 A. 200. In each case the workman was an expert machinist specially called in by the defendant to repair machinery essential to his business. In each case he was killed in the performance of his work. In the first case, repair of machinery used in the operation of the business was not usually performed by the defendant. It was therefore held not to be in the "regular course" of his business, which was boring for oil. Compensation was denied to his dependents.

In the second case, the defendant's foremen made the repairs alone or with the help of other employees, unless the job was beyond their capacity, when an expert would be called in. The deceased was such a one. Because the defendant made a practice of making ordinary repairs, the deceased was held to have been killed in the "regular course" of defendant's business, although it was engaged in making ice cream, and compensation was allowed. Each of these men went to his work probably unaware of the compensation gamble he was taking. Each did the same

type of hazardous work. Under such a test the chances are all against the casual workmen who are employed to do repair work by those thousands of employers under compensation acts, the size or nature of whose businesses does not permit them to maintain regular repair forces.

In Tuscaloosa Compress Co. v. Hagood, 229 Ala. 284, 286, 156 So. 633, 634, the court, in speaking of the two Pennsylvania decisions, said:

"We are not impressed that undue emphasis should be placed on maintenance of a regular repair force, or the frequency with which ordinary or extraordinary repairs are required. If in the operation of an industrial plant, consisting much of machinery whose repair is essential to effective operation, the making of such repairs is as truly within the regular course of business as any other part of its operation."

In refusing to follow the rule of the Callihan case, supra, the Commission of Appeals of Texas, in Wells v. Lumbermen's Reciprocal Assn., supra, 6 S. W. 2d 346, 347, in which compensation was allowed to plaintiff who was called in to repair two boilers which furnished power for defendant's plant and were essential to its operation, said:

"We have no difficulty in arriving at the conclusion that general repairs to machinery made necessary by the use thereof in the operation of the business are made in the usual course of the business. Such repairs are vital, essential, and necessary, in order that the business may be properly conducted. It is of no consequence that they may be made occasionally and not at regular intervals. As certain as machinery is used, it will be necessary to make repairs thereto. In a large plant, general repairs would perhaps consume sufficient time to justify the employment of a regular repairman who would give all of his time in looking after same. In a small plant, the general repairs required may be wholly insufficient to take up all of the time of an employee, but the man temporarily employed to make such repairs in such a case is as much in the usual course of the business as the employee whose entire time is taken up by such work. He is doing exactly the same character of work as the employee

who devotes all of his time thereto, and no sound reason exists for not giving him the same protection against injury. Under the holding of the Pennsylvania courts, in the final analysis, the size and extent of the business would in many instances be the controlling element in determining whether an employee was injured in the usual course of the business."

In 2 Schneider's "Workmen's Compensation Text" (Third or Permanent Ed., 1942) 110, section 279 (1), the author states:

"The weight of authority is to the effect that repairs are within the usual course of the employer's business, as they are a part of the employer's business and are to be anticipated and met when convenience or necessity dictates. Being an essential part of every business employing material things in its prosecution, there is no reason why one employed to make them should not be classed as an employee of the one for whom they are made. They are essential to the successful prosecution of every business whose implements are subject to the corroding touch of time. They are to be foreseen, provided for and made when necessary or convenient. The fact that one cannot exactly foretell just when they will have to be made is immaterial."

Numerous authorities from many states are cited in support of the text.

The appellee operated a retail grocery store and meat market. He was one from the innumerable number of employers in that class of business. It is ordinarily a labor-employing business. He at one time had a steady employee outside of the family. It is a business within the compensation act and one in which the need of employees may be anticipated. The conception underlying workmen's compensation is one of insurance, the object of which is to shift the burden of economic loss, caused by personal injuries to workmen, inevitable in industrial and business operations, from the employee to the industry, and ultimately to spread the cost thereof, including a reasonable recompense to the beneficiaries, upon society—the consumers in the aggregate. It contemplates that each individual or concern that may be liable as an employer will take out insurance against compensation liability and will include the amount of the

premium as an item in the determination of his selling price to his patrons. This is not a harsh burden.

We have cited a number of decisions herein by way of argument or illustration, but our decision is no broader than the facts involved, keeping in mind the words of the Lord Chancellor, in Manton v. Cantwell (1920), A. C. 781, 786, in which a farmer was held liable under the compensation act to a laborer injured in thatching the roof of the farmer's house, that it is "neither convenient nor proper to travel beyond the facts of the particular case in an attempt to lay down general rules to govern cases which may or may not arise hereafter * * *."

The appellant made out a prima facie case of employment by the appellee when he established that he was in the service of the latter under a contract of hire. The burden was then upon the appellee, in defense, to establish that appellant was an independent contractor, or that he was engaged in employment not for the purposes of appellee's trade or business. Domer v. Castator, 82 Ind. App. 574, 146 N. E. 881; In re Dobson's Case, 124 Maine 305, 128 A. 401, 42 A. L. R. 603; Washington Recorder Pub. Co. v. Ernst, 199 Wash. 176, 91 P. 2d 718 [97 P. 2d 116], 124 A. L. R. 667; Simila v. Northwestern Imp. Co., 73 Wash. 285, 131 P. 831, 833; Midgette v. Branning Mfg. Co., 150 N. C. 333, 64 S. E. 5; Murray's Case, 130 Maine 181, 154 A. 352, 353, 75 A. L. R. 720; Joslin v. Idaho Times Pub. Co., 56 Idaho 242, 53 P. 2d 323; Mississippi Pub. Serv. Co. v. Scott, 178 Miss. 859, 174 So. 573; Moulton v. Huckleberry, 150 Or. 358, 46 P. 2d 589; 2 Schneider's Workmen's Compensation Law (Second Ed.) 1863, 1868, section 537; Consumers' Mutual Oil Producing Co. v. Industrial Comm., 289 Ill. 423, 124 N. E. 608; Burdick v. Liberty Motor Freight Lines, Inc., 128 N. J. Law 229, 25 A. 2d 14, 16. Appellee accepted this burden by pleading these defenses. He failed to meet either burden. We have read all of the authorities cited by the appellee. We will not comment on them separately. Several are not applicable in view of the wording of Code section 1421 (3a). Others construing statutes having the term "usual course" of trade, etc., are not persuasive, particularly Holbrook v. Olympia Hotel Co., 200 Mich. 597, 166 N. W. 876, in which the

decision may well be regarded as based on the fact that the claimant was an independent contractor.

II. Appellee's last proposition is that we are bound by the commissioner's findings. There is no dispute in the evidence as to any material fact. The conclusions of the commissioner are, therefore, not of fact but of law, and are reviewable on appeal. Guthrie v. Iowa Elec. Co., 200 Iowa 150, 204 N. W. 225; Baldwin v. Sullivan, 201 Iowa 955, 204 N. W. 420, 208 N. W. 218; Tunnicliff v. Bettendorf, 204 Iowa 168, 214 N. W. 516; Johnston v. Chicago & N. W. Ry. Co., 208 Iowa 202, 225 N. W. 357.

It is our decision that the appellant at the time of his injury was in the employment of the appellee and was doing work for the purpose of the latter's trade or business, and that there was not sufficient competent evidence to warrant the making of the order or decision by the commissioner.

The judgment of the district court is therefore reversed and the cause is remanded for further proceedings and decision not inconsistent herewith.—Reversed and remanded.

OLIVER, GARFIELD, and WENNERSTRUM, JJ., concur.

SMITH, C. J., and HALE, MANTZ, MILLER, and MULRONEY, JJ., specially concur.

SMITH, C. J. (specially concurring)—I concur in the result reached by Judge Bliss in his opinion but only in that part of the reasoning necessary to base the decision squarely and solely on our own decisions in the case of Dial v. Coleman's Lunch, 217 Iowa 945, 251 N. W. 33, and Gardner v. Trustees of M. E. Church, 217 Iowa 1390, 250 N. W. 740. The maintaining of a nonleaky roof over appellee's place of business was surely for the purpose of his business.

HALE, MANTZ, MILLER, and MULRONEY, JJ., join in this special concurrence.